WRIGHT AND COLTON WIRE CLOTH COMPANY *vs.* FREDERIC WARREN, JR. & others.

Worcester.    October 3, 1900. — January 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

The plaintiff shipped certain goods from Worcester by rail and took a bill of lading naming the consignee as "Order of" the plaintiff and the destination as Charlestown, Mass., care of the defendant and containing the further direction "Notify A." The railroad company left the goods in the defendant's sheds upon his wharf, and delivered to the defendant a notice of the arrival of the goods, attached to which was a copy of the freight bill stating the consignee to be "Order of" the plaintiff and also containing the words "Notify A." The defendant, by a correspondence of which the plaintiff had no knowledge, had been led to believe that the goods were part of a consignment to A. to be shipped to England by one of the defendant's steamships, and in good faith delivered the plaintiff's goods to A. The plaintiff in the meantime drew upon A. for the price of the goods annexing to the draft the bill of lading received from the railroad company. The draft was not accepted nor paid by A. and was returned with the bill of lading to the plaintiff. The plaintiff, after demanding the goods from the defendant, brought an action of tort for their conversion. *Held,* that the defendant was notified by the copy of the freight bill that the consignment was to the order of the consignor, to his care, that the words "Notify A." did not authorize the defendant to treat A. as the consignee, and that the defendant's delivery of the goods to A. constituted a conversion, the fact that the defendant had acted in good faith being immaterial.

TORT, for the alleged conversion by the defendants of thirty-four barrels of zinc skimmings and for the non-delivery of the same to the plaintiff. Writ dated May 6, 1899. The case was heard by *Gaskill*, J., without a jury, upon agreed facts, by which it appeared that on or about July 9, 1898, the plaintiff delivered to the Fitchburg Railroad Company at Worcester a carload of zinc skimmings packed in thirty-four barrels marked ◊, and took from the railroad company a bill of lading, in which the goods were stated to have been received from Wright & Colton Wire Cloth Co. and the consignee was named as " Order of Wright & Colton Wire Cloth Co." The destination was named as Charlestown, Mass., and then followed the words " c/o Warren S. S. Line. Notify O'Connor Bros., 389 Atlantic Ave., Boston."

On or about July 12, 1898, the defendants received from the Fitchburg Railroad Company a notice of the arrival from Worcester of car No. 8721 loaded with thirty-four barrels of zinc skimmings marked as above, and containing the words " Nfy O'Connor Bros." Attached to this notice was a copy of a freight bill, with a charge of $9.84 to be collected of the consignee, and containing the following words:

" Order of
Wright & Colton Wire Cloth Co.    For Transportation.
Charlestown, Mass.                From Worcester
Nfy. O'Connor Bros.               Via
389 Atlantic Ave.                 W. B. No. 351 Date 7/11 1898.
    Boston.                       Original Point of Shipment.
                                                      Car
                                  Initial          Number.
                                                     8721 "

The carload of zinc skimmings had come over the line of the Fitchburg Railroad, and with its contents was then in the defendants' sheds upon their wharf; the defendants thereupon delivered to O'Connor Brothers a permit signed by the defendants and addressed to their receiving clerk at the steamship Kansas, Pier 5 Hoosac Tunnel Docks, Charlestown, Mass., directing him to receive from O'Connor Brothers " Zinc Dross Car 8721 ◊ 34 Bbl."

The freight charges, $9.84, were thereupon paid to the railroad company by the defendants, and the defendants then delivered to O'Connor Brothers, in lieu of the permit, a receipt signed by the defendants' receiving clerk, which acknowledged the receipt from O'Connor Brothers of the thirty-four barrels of zinc dross from car No. 8721 marked ◈ for shipment to Liverpool on board steamship Kansas.

All of the zinc dross contained in the car mentioned was placed on board the steamship Kansas by the men employed by the defendants' stevedore at the wharf; and thereupon, in place of the receipt above named and other receipts referred to in the defendants' offer of proof mentioned below, the defendants issued a bill of lading for one hundred and seven barrels of zinc skimmings, one barrel and four casks having been shipped at the request of O'Connor Brothers to another party, the barrels of zinc skimmings other than the thirty-four having been delivered by the teamster of O'Connor Brothers to the defendants. This bill of lading was issued to J. G. Fowkes and made the goods deliverable at Liverpool to his order or assigns.

The steamship Kansas sailed on July 12, 1898, and upon her arrival in Liverpool the one hundred and seven barrels of zinc skimmings were delivered in accordance with the bill of lading to the order of James G. Fowkes.

The plaintiff offered to prove the following facts, which, if competent, were to be taken to be true, the defendants objecting to their competency:

Other than as contained in the bill of lading and the freight bill of the Fitchburg Railroad Company above printed, the plaintiff did not give any orders for the shipment of the goods to the defendants, nor did it ever receipt for the goods to the defendants, nor deliver the bill of lading to anybody, but retained and kept the bill of lading all the time since its issuance, except that it drew upon O'Connor Brothers a draft for $369, the amount for which the carload of zinc dross was sold, annexing thereto the bill of lading; that the draft was not accepted or paid by O'Connor Brothers and was returned to the plaintiff. Of the facts stated in this paragraph other than that the plaintiff did not receipt for the goods the defendants had no knowledge.

The defendants offered to prove the following facts, which, if

competent, were to be taken to be true, the plaintiff objecting to their competency:

On or about June 30, 1898, James G. Fowkes, of Philadelphia, Pennsylvania, having previously arranged with O'Connor Brothers, doing business at 374 Dorchester Avenue, Boston, Massachusetts, that they should purchase for him forty tons of zinc dross, agreed with the defendants in and by letters, copies of which were annexed, for the shipment of forty tons of zinc dross to Swansea, England, by the steamship Kansas, one of the line of steamships known as the Warren Line, running between Boston and Liverpool.

On July 5, the defendants sent to O'Connor Brothers the following letter, and enclosed therewith the following permit:

"Boston, July 5, 1898.

Messrs. O'Connor Bros.,

374 Dorchester Avenue, Boston.

Dear Sirs:

In compliance with request from Jas. G. Fowkes of Philadelphia we hand you herewith permit for 40 tons of Zinc Dross for Swansea for our steamer Kansas intended to sail 12th inst.

Yours truly,

Warren & Co.

C. P. Jameson."

"Permit.

Hoosac Tunnel

Boston, July 5, 1898.

To the Receiving Clerk at Steamship    Kansas .

Pier 5 Hoosac Tunnel Docks,    Charlestown:

Receive from    O'Connor Bros.

40 tons Zinc dross

Warren & Co.

Per T.

Particulars of Goods Received."

O'Connor Brothers thereupon sent in charge of their teamster to the docks of the Warren Line four casks and fifty barrels of zinc dross, all marked ◊, the number of barrels and casks as received being marked upon the permit. The teamster thereupon surrendered the permit to the defendants, and received from them at the hands of their receiving clerk the receipt.

Subsequently O'Connor Brothers sent to the docks in charge of their teamster eight and afterwards sixteen more barrels of zinc dross marked ⬦̸, with permits, the number of barrels as received being marked upon the permits; and upon the delivery of the barrels and surrender of the permits O'Connor Brothers received from the defendants the receipts.

All the zinc dross so delivered at the docks by the teamster as well as that contained in the car above mentioned was placed on board the Kansas by the men employed by the defendants' stevedore at the wharf.

Before paying the freight charges to the Fitchburg Railroad Company the defendants received the amount thereof from O'Connor Brothers.

The Kansas arrived in Liverpool on July 24, 1898, and the cargo was promptly discharged, and all goods delivered to the consignees or order within a few days thereafter.

Of all the foregoing facts offered by the defendants and objected to by the plaintiff the plaintiff had no knowledge.

Subsequently the plaintiff sent to the defendants the following letter, enclosing the bill of lading from the Fitchburg Railroad Company, which was the first communication, written or verbal, received by the defendants from the plaintiff:

" Worcester, Mass., U. S. A.
" Sept. 2, 1898.
" Warren Steamship Co.,
" Boston, Mass.
" Gentlemen :

" On July 9th last we made a shipment of a carload of Zinc Skimmings consisting of thirty-four (34) barrels weighing 24,600 pounds net in a Fitchburg car ♯ 8721 to order for ourselves at Charlestown, Mass., care Warren Steamship Line. We sold this goods cash against B/L to Messrs. O'Connor Bros. of Boston, Mass. We sent B/L with our draft to the Bank, and after the return of the draft and correspondence of two or three weeks with Messrs. O'Connor Bros. are unable to collect the amount. We learned later that this car of material had been delivered to O'Connor Bros. and we placed a claim with the Fitchburg R. R. Co. for the amount of the bill, which is $369.00. We have had their communication stating that they respectfully decline to pay

the claim as they handled the shipment according to the conditions of the B/L, they further state that your company were fully advised of all the conditions.

" Enclosed please find a bill for this carload of material also the original B/L attached. We understand that the goods have been forwarded to England.

" Will you please give this matter your prompt attention, and if you can deliver to us on the other side this carload of material we shall be willing to pay regular freight rate on the same, London, with interest deducted since July 10th last to date of settlement as this was a cash sale. If you cannot deliver this goods to us we shall expect to receive your remittance for the amount of our bill with interest at 6 % from July 10th last.

" We hope to hear from you by return mail in regard to this matter, we are,

" Yours very truly,

" Wright & Colton Wire Cloth Co.

" Geo. M. Wright."

There was subsequent correspondence between the plaintiff and defendants, which resulted in the bringing of this action.

If the plaintiff was entitled to recover, damages were to be assessed at $369, and interest from such time as the court might determine.

The Superior Court gave judgment for the plaintiff and assessed damages in the sum of $407.31. From this judgment the defendants appealed.

*B. L. M. Tower*, for the defendants.

*A. P. Rugg*, for the plaintiff.

LATHROP, J.   While the defendants when they received the goods had no knowledge of the fact that a bill of lading had been issued to the plaintiff by the Fitchburg Railroad Company, they were notified by the freight bill that the plaintiff was the consignee of the goods, and that the goods were consigned to the care of their line. The words in the freight bill " Notify O'Connor Brothers," did not authorize them to treat this firm as the consignee. *North* v. *Merchants & Miners' Transportation Co.* 146 Mass. 315, 319. *North Pennsylvania Railroad* v. *Commercial Bank of Chicago*, 123 U. S. 727, 736. *Bank of Commerce*

*v. Bissell*, 72 N. Y. 615.  *Furman* v. *Union Pacific Railroad*, 106 N. Y. 579, 587.  *Joslyn* v. *Grand Trunk Railway*, 51 Vt. 92. *First National Bank of Peoria* v. *Northern Railroad*, 58 N. H. 203.

The contention of the defendants that they received the goods from the firm of O'Connor Brothers, which, it is alleged, was in actual possession of them, and that therefore the case comes within *Gurley* v. *Armstead*, 148 Mass. 267, is not in accordance with the agreed facts.  These show that the Fitchburg Railroad Company left the goods in the defendants' sheds upon their wharf.  The defendants then issued a permit directing the receiving clerk of their steamship to receive from O'Connor Brothers the goods in question, and delivered to O'Connor Brothers a receipt for the goods for shipment to Liverpool, and the permit was surrendered to the defendants.  The case therefore stands very differently from what it would if the defendants had had nothing to do with the goods before receiving them from O'Connor Brothers.  In exercising dominion over them by allowing O'Connor Brothers to take them away from the defendants' sheds, they deprived the plaintiff of its goods, and are liable to it for their value.  This of itself was a conversion. *Claflin* v. *Boston & Lowell Railroad*, 7 Allen, 341.  *Hall* v. *Boston & Worcester Railroad*, 14 Allen, 439.  *Newcomb* v. *Boston & Lowell Railroad*, 115 Mass. 230.  *Alderman* v. *Eastern Railroad*, 115 Mass. 233.  *Libby* v. *Ingalls*, 124 Mass. 503.  *Forbes* v. *Boston & Lowell Railroad*, 133 Mass. 154.  *North* v. *Merchants & Miners' Transportation Co.* 146 Mass. 315, 319.

We do not see anything in the evidence offered by the defendants to show how they came to be misled in allowing O'Connor Brothers to take the goods, by reason of the arrangement which they had with Fowkes, which can affect the right of the plaintiff to recover.  The plaintiff was not a party to this arrangement, and knew nothing about it.  The right of the plaintiff to its goods or to their value cannot be affected by the arrangement with Fowkes.

*Judgment affirmed.*