ENDICOTT-JOHNSON COMPANY *vs.* FRANK L. SIMPSON & another.

Suffolk. March 9, 1910. — May 18, 1910.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & RUGG, JJ.

*Mistake. Set-off. Assignment,* For the benefit of creditors. *Contract,* Implied in law.

If a purchaser of goods carries on a course of dealing with a seller of goods, and, when meaning to pay the balance of the money due from him for purchases of goods, less a discount up to a certain date, by reason of a mistake of his bookkeeper, who does not know of a previous payment, makes an overpayment, he afterwards, if he avails himself of his right, can set off the amount of the overpayment against the price of goods purchased later by him from the same seller, but if, instead of doing this, not having discovered his previous overpayment, he pays for a new shipment of goods the full price of those goods less the customary discount, he cannot recover from the seller or from the seller's assignee for the benefit of creditors the amount of the price of the goods last purchased as having been paid under a mistake of fact, because there was no mistake in this transaction, the mistake of the overpayment having been made in a previous one.

If an assignee under a common law assignment for the benefit of creditors, made by a seller of goods, receives as a part of the assets of his assignor a check given to his assignor in payment for certain goods by a purchaser who has a previous claim against the assignor for an amount greater than the amount of

the check and accordingly has a right to set off such claim against the check, and if, instead of depositing the check immediately for collection, the assignee holds it for nearly two weeks, thus affording the maker of the check an opportunity to stop payment on it if he chooses to do so or to avail himself in some other way of his right of set-off, and, the maker having failed to do this, the assignee deposits the check in a bank for collection and it is paid in due course, although the maker of the check had actual notice of the assignment and of the state of his account with the assignor before the check was paid, the maker of the check has lost his right of set-off, which he failed to assert, and has no right of action against the assignee for the amount of the check because of its receipt and subsequent collection.

CONTRACT, against the assignees of the members of a partnership called Bemis and Wright under a common law assignment for the benefit of creditors, for $436.52 for money alleged to have been received by the defendants to the plaintiff's use, with originally another count in tort, alleging the conversion of a check for $436.52, alleged to be the property of the plaintiff. Writ dated July 10, 1909.

In the Superior Court the case was submitted to *Pierce, J.,* upon an agreed statement of facts. He gave judgment for the defendants, and the plaintiff appealed.

The agreed statement of facts was as follows:

On or about May 28, 1908, the plaintiff, a corporation doing business at Endicott in the State of New York, began to purchase boots and shoes of Gilbert C. Bemis and Ward E. Wright, copartners doing business at Lynn, Massachusetts. These purchases ran into considerable amounts during the months of July, August and September, 1908. The course of business between the parties was as follows:

Bemis and Wright would send shipments of goods to the plaintiff charging them usually a gross price, but allowing a discount of seven per cent upon payment within ten days. The plaintiff would pay sometimes for specific shipments, and at other times would pay a balance due consisting of the price of several shipments.

On September 1, 1908, the plaintiff owed Bemis and Wright for goods shipped from August 15 to 29 inclusive a sum which, after deducting the discount, amounted to $3,253.83. In order to avail itself of the discount for payment within ten days, on September 1, 1908, the plaintiff sent to Bemis and Wright a check for $1,500 on account. Later, on September 10, the plain-

tiff sent to Bemis and Wright a check for the full amount of $3,253.83, and on September 12, this amount was received and the plaintiff was credited on the books of Bemis and Wright with the amount of the payment, and also the amount of the discount of seven per cent, although on part of the articles paid for the ten day discount period had expired before the payment of $1,500.ⁱ  The amount of the discount was $244.86.

This payment of $3,253.83 was made through the mistake of a bookkeeper in the office of the plaintiff who did not know of the previous payment of $1,500, and was intended as payment in full of all indebtedness to September 1, 1908.

On September 2 and 5, goods were shipped by Bemis and Wright to the value of $532.23 and $469.37 respectively, and checks for these amounts, less discount, were sent by the plaintiff to Bemis and Wright on September 14 and 15 respectively, the bookkeeper still being ignorant of the payment of $1,500 on September 1, and these payments being intended as specific payments for the two shipments of September 2 and 5, respectively.  The first of these checks was received by Bemis and Wright on September 16, 1908, was deposited in the bank that day or the next, and was paid in due course; the second was for $436.52, and was received on September 18.  On September 19, 1908, Bemis and Wright made a general assignment for the benefit of creditors to the defendants, and notice of this assignment was sent to the plaintiff by mail, postage prepaid, on September 19, 1908.

In the meantime, on September 11 and 12 respectively, Bemis and Wright sent to the plaintiff goods to the value of $671.33 and $269.28 respectively, subject to the usual discount, the total of those two amounts, less discount, being $874.77.

On September 18, 1908, Bemis and Wright consulted Frank L. Simpson, one of the assignees, about the check of September 15, for $436.52, stating to him that it was a check in payment for a specific bill of goods, and asking him if they should deposit the check in the Lynn National Bank, in which Bemis and Wright were in the habit of making their deposits.  The assignment of September 19 was then in contemplation.  Mr. Simpson advised Bemis and Wright not to deposit the check, because the bank held notes of Bemis and Wright considerably in excess of

their deposits, and would have the right, if this check were deposited, to set it off against the amount of their notes, which would, in Mr. Simpson's view, give the bank an unfair preference over other creditors of Bemis and Wright, as to the amount of that check.

On the day of the assignment, the assignees received this check as part of the assets of Bemis and Wright. On September 21, they asked the bookkeeper for a statement of the accounts, and inquired as to the account with the plaintiff. The assignees did not receive a statement of the accounts until nearly a month after this conversation; but a few days after September 21, the bookkeeper, and also Mr. Bemis, stated to them that apparently there was a balance in favor of the plaintiff. The assignees, being in doubt as to the balance between Bemis and Wright and the plaintiff, and wishing to give the plaintiff an opportunity to stop payment on the check if the balance was in their favor, delayed depositing it until September 30, 1908; but did not notify the plaintiff of that delay, thinking that it would be unfair to other creditors, for the assignees to go to the extent of notifying the plaintiff to stop payment under the circumstances.

Before the assignment there were orders from the plaintiff to Bemis and Wright, which had not been filled. The exact amount of these orders was unknown, but it was agreed that it was greater than the amount of the entire credit balance in favor of the plaintiff, including the amount of the check of September 15.

On or before September 24, 1908, and after the plaintiff had actual notice of the assignment, the sales agent of the plaintiff wrote to Thomas W. Gardiner, one of the assignees, requesting the shipment of goods to make up the unfilled orders. At the time of writing this letter, the sales agent knew that there was a credit balance in favor of the plaintiff but made no demand for the return of the check of September 15, or its equivalent in cash. The plaintiff made no attempt to stop payment upon that check, and, if material, it is agreed that its sales agent supposed the check had been paid in due course before he wrote the letter of September 24, requesting that goods be shipped to make up the unfilled orders.

On October 3, 1908, the plaintiff wrote to Mr. Gardiner, re-

ferring to the former request to make shipments to complete the unfilled orders, calling attention to the fact that there was a credit balance in favor of the plaintiff and requesting that goods be shipped, at least to the amount of the credit balance. The assignees replied that they were not in a position to continue the business of Bemis and Wright, and could not ship any goods; whereupon the plaintiff consulted counsel, with the result that on October 19, 1908, Messrs. Page and Hays of Binghampton, New York, wrote to the assignees as attorneys for the plaintiff asserting that the plaintiff was entitled to payment in full and in preference to the other creditors of Bemis and Wright, of a balance of $876.36, which was made up of the following items:

1. The amount of the check of September 15, $436.52.

2. The difference between the amounts of previous checks and the prices, less discount, of goods shipped, $188.72.

3. The amount paid for goods returned as defective, $251.12.

In this letter for the first time appeared the suggestion that the check of September 15, 1908, should have been returned to the plaintiff, instead of being deposited to the credit of the assignees. This action was for the amount of that check.

It was agreed that the assignment by Bemis and Wright to the defendants was a valid common law assignment for the benefit of creditors, that the plaintiff never assented to the assignment, or became a party to it in any way, or attempted to do so, and that the assets in the hands of the defendants were not sufficient to pay in full the creditors who had assented.

It was agreed further that the court might draw inferences of fact from the foregoing facts.

*G. A. Sweetser*, for the plaintiff.

*G. P. Drury*, (*F. L. Simpson* with him,) for the defendants.

KNOWLTON, C. J. The plaintiff corporation now relies only upon its count for money had and received. Its first contention is that it should be permitted to recover as for money paid by mistake, and, secondly, it argues that the receipt and subsequent collection of the check by the defendants was a fraud upon it, and that it can recover for the money so collected.

There was a mistake by the plaintiff's bookkeeper in overpaying Bemis and Wright, the defendants' assignors, for the shipments of goods before September first. Afterwards other

shipments were made, after two of which checks were sent at different times in payment. Upon every sale a discount of seven per cent was allowed if payment was made within ten days. In payment for the shipment of September 5 a check was sent on September 15 for $436.52, the exact amount due, less the discount. This amount the plaintiff now seeks to recover as money paid under a mistake of fact.

There was no mistake of fact that entered into this transaction. The goods were sent, the plaintiff received them, they were of the value stated and the plaintiff owed for them. It sent this check in payment for these specific goods, and the check was received and collected, and applied in payment. The only mistake was in reference to the fact that the former account for goods sent before September 1 had been overpaid to the amount of $1,500. Bemis and Wright owed the plaintiff this sum. The plaintiff could have set off this overpayment against its indebtedness for the shipments made after September 1. But it did not attempt to do this. It paid for two of these shipments, including the one in question, without seeking to apply the former overpayment in set-off. This left Bemis and Wright owing it $1,500 for the overpayment, and it owed Bemis and Wright for the two shipments which were later than this for which the check of $436.52 was sent by a mistake that did not enter directly into the transaction. See *Franklin Bank* v. *Raymond*, 3 Wend. 69; *Labarge* v. *Renshaw*, 28 Mo. 363. Its failure to set off the debt due it for the overpayment did not affect its substantive rights. R. L. c. 174, § 1. *Fiske* v. *Steele*, 152 Mass. 260.

On September 19, 1908, this check was turned over to the defendants as a part of the assets of Bemis and Wright, conveyed to them under a general assignment for the benefit of creditors. They did not attempt to collect it at once, having learned a few days later that the books of Bemis and Wright showed a substantial balance due the plaintiff. On September 30, they deposited it in a bank and it was paid without question. The plaintiff had actual notice of the assignment and of the state of the account, before the check was paid.

There was no fraud or wrong on the part of the defendants as assignees in collecting this check which was received in payment

for specific goods sold and delivered to the plaintiff. Their failure to collect it, for nearly two weeks after it came into their hands, gave the plaintiff an opportunity to stop payment of it if it chose, and to avail itself of all its legal rights of set-off, or of whatever kind, in connection with the shipments which it had received. It has a valid claim against Bemis and Wright on account of the overpayment, of which it can take advantage through the assignment to the defendants, or otherwise.

We discover no ground on which it can recover the amount of this check which was sent and was received and collected in the usual course of business as a payment for specific goods sold and delivered to the plaintiff.

*Judgment affirmed.*