## ATCHISON, T. & S. F. RY. CO. v. ETHERTON.

No. 3415.   Opinion Filed January 9, 1915.

(145 Pac. 779.)

1.   CARRIERS—Action for Conversion—Evidence — Sufficiency—Question for Jury. Plaintiff sued in trover for conversion of a certain wagon; the undisputed testimony shows that the property was delivered to defendant to be transported to Los Angeles, California. Upon instruction from plaintiff, the property was shipped to Kansas City, Mo., arriving September 9th. On September 16th, plaintiff arrived in Kansas City for the purpose of paying the freight and receiving the property. Defendant demanded as freight $326, which plaintiff refused to pay, claiming same was excessive. The agent of defendant admitted it was excessive, and made an effort to have it adjusted. Plaintiff remained in Kansas City for two weeks, going to defendant's office daily, in an effort to pay the proper amount of freight and receive the property. Several weeks afterwards, defendant reduced the amount to $146.70, admitting the former amount demanded was excessive. Held, the evidence was sufficient to carry the issue to the jury on the question of conversion. Held, further, a formal demand and a specific tender of the amount of freight were not required, under the circumstances of this case.

2.   SAME—Conversion of Shipment—Demand—Tender of Freight. Instructions of the court examined, and held to fully and fairly cover the issues. Held, further, no error in the court's refusal to charge the jury as requested by defendant.

(Syllabus by the Court.)

*Error from District Court, Oklahoma County;*

*W. R. Taylor, Judge.*

Action by A. M. Etherton against the Atchison, Topeka & Santa Fe Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*Cottingham & Bledsoe* and *Charles H. Woods,* for plaintiff in error.

*E. S. Bessey,* for defendant in error.

RIDDLE, J.   The parties will be referred to here in accordance with their positions on the docket of the trial court.

Plaintiff filed his suit in trover in the district court of Oklahoma county for conversion of a certain peanut, popcorn, and candy wagon, claiming damages in the sum of $700.   The petition alleges substantially that plaintiff, on August 12, 1909, had delivered to defendant the wagon at Amarilla, Tex., for shipment to Los Angeles, Cal., prepaying the freight in the sum of $31.50; that thereafter, at the request of plaintiff, said wagon was shipped from Los Angeles, Cal., to Kansas City, Mo., arriving there September 9th; that on September 16th plaintiff went to the freight office in Kansas City to pay the freight and charges thereon and to receive the wagon; and that said defendant, through its agents, refused to deliver said wagon, except upon the condition that plaintiff pay as freight the sum of $326.92; that said amount was exorbitant and the demand unreasonable.   Plaintiff offered to pay the usual and established freight and other charges and remained in Kansas City for more than two weeks, and called on defendant from day to day for the purpose of paying the freight and receiving said wagon, which was refused, except on the conditions above stated.

Defendant filed its amended answer to this petition, consisting: (1) Of a general denial; (2) admitting the shipment as alleged, and further admitting that after considerable time, it agreed to accept the sum of $146.70, which was in accord with the legal tariff rates.   It also sets up a counter-claim and asks judgment for the amount of the freight in the sum of $146.70.   A reply, constituting a general denial, was filed to this answer.   Upon the issues thus made, the cause proceeded to trial to a jury, and a verdict was returned in favor of plaintiff in the sum of $610.   A *remittitur* was ordered, which was filed, reducing the judgment to $533.30.   Motion for new trial was filed and over-

ruled, and defendant prosecutes error by filing his petition in error and case-made in this court. Defendant alleges the following errors:

"(1) The court below erred in overruling the motion for new trial, and upon each and every of the grounds contained in said motion.

"(2) The court erred in accepting the verdict of the jury, and in rendering judgment thereon.

"(3) The court erred in refusing to instruct the jury in accordance with certain relevant and pertinent requests of the defendant, which said instructions so requested by the defendant are found on record pages 146 to 150, inclusive, and being numbered 1 to 9, inclusive.

"(4) The court erred in instructing the jury in accordance with his general charge to the jury, which said charge is found on record pages 152 to 157, inclusive, the said charge as a whole being erroneous and each and every of the paragraphs thereof.

"(5) For errors of law occurring on trial of said cause, excepted to at the time by plaintiff in error.

"(6) Error in the court below in refusing to direct a verdict in favor of the plaintiff in error.

"(7) Because the court below erred in permitting the verdict of the jury to stand as remitted, the same being based on error in the amount of the recovery, the verdict being too large.

"(8) The court below erred in permitting the verdict of the jury to stand, the same not being based upon sufficient evidence, any evidence, and contrary to law."

The only questions raised by these various assignments necessary to be considered here, are: (1) Did the court commit reversible error in submitting this cause to the jury? (2) Did the court properly charge the jury as to the law in the case? (3) Did the court commit error in refusing to charge the jury as requested by defendant?

Under the first proposition, it is earnestly insisted by counsel for defendant that the facts are undisputed, and, accepting the testimony of plaintiff as true, there was no issue of fact warranting the court in submitting the issues to the jury. We are unable to agree with counsel in this contention. This proposition presents the question as to whether or not the facts in this case are sufficient to show a conversion of the property by defendant. The law seems to be well settled that where a party delivers to a common carrier, goods for shipment, such common carrier, when the goods reach their destination, is entitled to retain possession of such goods until the legal amount of freight is paid thereon, and that such carrier has a lien upon said goods for the security of the payment of said freight. This proposition is not denied by plaintiff. The law is equally well settled that a refusal of a carrier to surrender goods upon demand and the payment or tender of the legal amount of freight and other legal charges, or if such carrier refuses to surrender said goods, except on condition of the payment of an excessive and illegal amount as freight, after a reasonable time within which to investigate and ascertain the true amount of legal charges, such action will constitute a corversion, and trover will lie. It is undisputed that the goods remained at their destination in Kansas City from the 9th until the 16th of September before plaintiff arrived and made demand for same; that after his arrival, he remained in Kansas City for two weeks in an endeavor to have the proper amount of freight ascertained, for the purpose of paying same and receiving the property; that the agents in charge of defendant's freight office at Kansas City, in effect, admitted the amount was erroneous and excessive and made efforts to have it adjusted; that several weeks after plaintiff left Kansas City, defendant admitted that the amount first demanded was excessive, and proposed to surrender the goods upon payment of $146.70. We are of the opinion that this state of facts was sufficient to carry this issue to the jury as to whether or not, under all the facts and circumstances, it con-

stituted conversion.  It was said in the case of *Beasley v. Baltimore & Potomac R. Co.,* 27 App. D. C. 595, 6 L. R. A. (N. S.) 1048, the syllabus reads:

"Refusal of a connecting carrier to surrender freight, at least after a reasonable time to ascertain the facts, upon tender of the rate stipulated for in the carriage contract, which is in excess of its own portion of the through rate, because of a waybill in its possession calling for a larger sum, which is substantially admitted to be a mistake, is a conversion for which trover will lie.  Six days is not so clearly a reasonable time for a carrier to consume in ascertaining the correctness of a rate for shipment of freight from a point in Florida to Washington, District of Columbia, and that the court can take the question from the jury in an action to recover for conversion of the property."

Again, in the case of *Northern Transportation Co. of Ohio v. Sellick,* 52 Ill. 249, in the syllabus, it is held:

"1.  If one person has the property of another in his possession, and the owner makes demand of it, and the party in possession, without right, refuses to deliver it, that will constitute a conversion of the property by the latter to his own use.

"2.  So, where the owner of a carriage shipped the same by a common carrier, the amount to be charged for the transportation being first agreed upon, and, upon the carriage reaching its destination, was demanded by the owner, he offering to pay the charges as agreed, but the agent of the carrier refused to deliver it except upon the payment of a larger amount, held, this was a conversion of the property by the carrier, and the owner could maintain trover therefor.  The latter discharged his duty by making demand for the carriage immediately on its arrival and offering to pay the freight agreed upon."

Other cases, in effect, sustaining this proposition are: *Marsh v. Union Pac. Ry. Co.* (C. C.) 9 Fed. 873; *McEntee v. N. J. Steamship Co.,* 6 Am. Rep. 28; *Richardson v. Rich,* 104 Mass. 159, 6 Am. Rep. 210; *Whitlock v. Heard,* 13 Ala. 776, 48 Am. Dec. 75; *Peebles v. Boston & A. Ry. Co.,* 112 Mass. 509; *Louisville & N. W. Ry. Co. v. Lawson,* 88 Ky. 496, 11 S. W. 511;

*Wright & Cotton Wire Co. v. Warn,* 177 Mass. 283, 58 N. E. 1082.

Under this proposition, the point is also made that the court should have directed a verdict for the defendant, for the reason plaintiff failed to prove a specific demand for the goods, and a tender of the proper freight. The court, in our judgment, properly charged the jury upon this issue, which we will notice later. We are of the opinion that if the evidence in this case failed, as a matter of law, to show a sufficient demand, it certainly was sufficient to carry the case to the jury. It is shown by plaintiff's testimony, and not denied, that he went to Kansas City for the purpose of paying the freight and receiving these goods, and remained there for two weeks, and visited the office of the railway company practically every day for that length of time. It would seem that as a matter of law, this should be a sufficient demand, and it certainly was sufficient to go to the jury for its determination. We are also of the opinion that under the facts and circumstances of this case, a specific tender was not required. This issue was also submitted to the jury. It appears from the facts and circumstances reasonably certain that a tender of the amount which was actually due at the time would have availed the plaintiff nothing. It would have been a useless and vain act, for the reason it is shown that defendant, for the two weeks plaintiff was in Kansas City, was demanding something more than twice the amount of the freight, afterwards admitted to be due, and never intimated, either by word or sign, that it would accept less; and, in addition to this, defendant is insisting in this court as a reason why it cannot be liable in conversion it retained a lien upon the goods for the full amount of freight due, and it is admitted the two weeks plaintiff was in Kansas City, and for several weeks thereafter, the amount which it claimed to be due and demanded was something more than twice the actual amount due. Under these circumstances, plaintiff was relieved of making a specific tender.

We will now consider whether or not the court properly charged the jury as to the law. In charge 5, the court instructed the jury upon the issue of conversion as follows:

"You are instructed as a matter of law that a common carrier of freight, which through its agents demands, as a condition precedent to its delivery to the consignee, a sum larger than the established tariff rates, and which is subsequently admitted to be a mistake or overcharge, will constitute a conversion when such mistake and overcharge is insisted upon by the carrier beyond a reasonable and sufficient time for the carrier to ascertain the facts as to the true and proper rate, and if you find from the evidence in this case that the defendant railway company demanded of the plaintiff a sum greater than the true, regular established rate, and insisted upon the same for an unreasonable time as a condition of surrendering this wagon to the plaintiff, that no tender or payment of freight is necessary on the part of the plaintiff before bringing an action for conversion."

Paragraphs 6, 7, and 8 of the court's charge should be considered in connection with this charge, which are:

"(6) You are instructed, further, that a reasonable time is a question for you to determine under all the circumstances in this case, taking into consideration the nature of the shipment, its classification, and the means available to the agents of the defendant company to ascertain the true rate.

"(7) You are instructed that the defendant was in duty bound to deliver this shipment with reasonable dispatch; and, while accidents and obstructions will excuse delay in delivery, as soon as the same can be reasonably overcome, the carrier should make delivery.

"(8) To constitute a conversion of goods by a carrier, it is necessary that there should have been an actual appropriation of the property by the carrier to its own use or benefit; but such appropriation might arise from the exercise of wrongful dominion over it to the exclusion of the rights of the owner, or withholding it from the possession of the plaintiff under a claim inconsistent with his rights, but a reasonable detention of a chattel by a carrier

-will not constitute a conversion, and it is for you to determine in this case whether there was or was not an unreasonable detention."

These various instructions, considered together, in our judgment properly and fully submitted the issue of conversion to the jury as applied to the facts in this case.

In paragraph 10 of the court's charge, the jury was instructed on the question of tender as follows:

"You are instructed that a formal demand for the delivery of the property converted by a carrier, or a tender of the charges for freight, may be waived by the carrier, and if you find that the actions of the defendant carrier in this case were such as to indicate to the plaintiff in advance that a tender or formal demand would be unavailing, such action would constitute a waiver and no demand or tender would be necessary as a condition precedent to the bringing of this action."

We think this is a correct declaration of the law as applied to the facts. This position is well settled by this court. *Citizens' State Bank v. Chattanooga State Bank,* 23 Okla. 767, 101 Pac. 1118; *Brunson v. Merrill,* 17 Okla. 44, 86 Pac. 431; *Maddox v. Dowdy,* 31 Okla. 169, 120 Pac. 651; *Hutchings v. Cobble,* 30 Okla. 158, 120 Pac. 1013.

In paragraph 11 the court charged the jury in regard to the legal freight rate which is in accord with the views of counsel for defendant. In paragraphs 12 and 13 the jury was instructed as to the measure of damages, which instructions are as follows:

"(12) If you find that there was a conversion of this wagon on the part of the defendant, according to the foregoing instructions, the measure of damages will be the value of the wagon at the place of conversion at the time it was so wrongfully detained, less the true amount of freight, or other just charge, due the defendant at the time of conversion.

"(13) You are instructed that after a conversion has taken place, the owner is under no obligation to receive the property if

tendered to him, unless you find that such return of the property would place the owner in practically the same situation as he was at the time of the conversion."

In our judgment, this is a correct statement of the law. It remains to be seen whether the court committed reversible error in refusing to charge the jury as requested by defendant, which requested instruction is as follows:

"If you find for the plaintiff in this case, you will assess his damage according to the following rule: You will ascertain the value of the shipment at the place and on the date at which it should have been delivered, deducting the freightage, to which the defendant would have been entitled had it completed the delivery, and in this connection, I charge you, further, that you may consider in mitigation of damages the fact that defendant in its answer has asserted that it now has the possession of the property and tenders and agrees to return the possession thereof and deliver the same to the plaintiff. Under such circumstances, I charge you that you are authorized to consider the value of the property at the time and place it should have been delivered, and consider the value of the property in its present condition, and the difference, if any, will make up the amount of your verdict. In any event, the defendant is entitled to its proper freight charges."

We think the court committed no error in this respect, for two reasons: (1) The court properly charged upon this issue in its general charge to the jury; (2) this instruction does not correctly state the law. The plaintiff did not sue for damages for detention of the property, and this issue was not in the case, and therefore it would have been improper for the court to have so charged the jury as requested. This charge would have been inconsistent with the issues in the case, and if the defendant was liable in trover for conversion, this certainly is not a proper charge, applicable to the facts. The court did charge the jury, in effect, that defendant was entitled to an offset for the amount of legal freight and charges due. It is further insisted that the court should have charged the jury that a tendering of the property in the amended answer was proper in mitigation of damages.

We are of the opinion that the facts in this case did not warrant such a charge. There may be circumstances in a suit in trover for conversion wherein a proposition involved in this charge might be proper, but we are clearly of the opinion it was not applicable to the facts and issues before the court.

The evidence in this case warranted the court in submitting all the issues to the jury; and, finding no reversible error in the instructions given and in the refusal to give said requested instructions, the judgment of the trial court must be affirmed. It is so ordered.

All the Justices concur.