E. T. ROONEY & another *vs.* L. S. McLEOD.

Suffolk.     October 19, 1922. — November 29, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Sale,* Acceptance. *Payment. Practice, Civil,* Requests, rulings and instructions.

In the declaration in an action of contract, the plaintiff alleged in substance that the defendant ordered of him in New Jersey through a broker two carloads of potatoes at a certain price and of a certain grade, "f.o.b. loading station . . . Terms Regular;" that in accordance with the order the plaintiff shipped the two carloads to the defendant; that the defendant paid to the plaintiff the money due for one carload but refused to pay for the other carload. The answer alleged a general denial and payment. At the trial, the following facts appeared: The two carloads were shipped in accordance with the order with separate "straight" non-negotiable bills of lading consigning the goods to the plaintiff, "advise" the defendant, which were sent to a bank, drafts attached. The bill of lading of the first car carried the marking, "Abnormal conditions prevail on the lines of the carrier which will handle this shipment and it is subject to delay;" and, when produced at the trial, had the indorsements of both the plaintiff and the defendant; the bill of lading of the second car had the notation "subject to

delay," and was not indorsed by either party. Being notified of the arrival of the first car, the defendant sent his bookkeeper to the bank to pay the draft as to that car, which was being unloaded. Through oversight, the bookkeeper paid the draft on the second car, which had not come in. The defendant, upon learning of the error, wrote to the plaintiff, stating that the payment was intended to be on the first car, objecting to the second car having been billed to the plaintiff's order and "subject to delay," and claiming that a balance should be repaid to him because of an overpayment on the first car. The defendant accepted and took possession of the first carload. On arrival of the second carload, later, the defendant refused to accept the goods and the plaintiff was notified and had the bill of lading transferred to another. In the meantime, the carrier had sold the second carload as perishable goods and was in possession of the proceeds of the sale. The judge ordered a verdict for the plaintiff for the contract price of the first carload. *Held*, that

(1) The shipments were to be paid for as each car arrived, under its own bill of lading, and the error of mistaken identity, made by the defendant's bookkeeper, could not in any way be attributed to the plaintiff;

(2) The defendant having continued to exercise ownership of the first carload with knowledge of his bookkeeper's error, the plaintiff had a right to waive the condition of payment, attached for his own security as a condition precedent to delivery, treat the title as having constructively passed, and maintain this action for the purchase price;

(3) The mutual obligations of the parties as to the second carload were not in issue, and therefore evidence, bearing on the construction of the contract relating thereto and whether it was performed, properly was excluded and requests for rulings relating to those subjects properly were refused;

(4) There was no evidence to support the defence of payment for the first carload;

(5) The verdict properly was ordered.

CONTRACT. The allegations of the declaration were, in substance, that the defendant ordered two carloads of potatoes of the plaintiff in accordance with the confirmation described in the opinion; "that thereafter in accordance with said order the plaintiffs shipped to the defendant by freight the two carloads of potatoes referred to; that the defendant paid to the plaintiffs the money due them for one carload of potatoes and, although the plaintiffs have demanded payment by the defendant of the amount due for the other carload of potatoes referred to, the defendant has ignored such demand and utterly refuses to make payment in accordance with the terms of his agreement. Wherefore an action hath accrued to the plaintiffs and they claim damages in the sum of $1,440 with interest thereon." Writ dated November 30, 1920.

The answer contained a general denial and an allegation of payment.

In the Superior Court, the action was tried before *Wait,* J. Material evidence is described in the opinion. At the close of the evidence, the defendant asked for the following rulings:

"1. That if the jury find that [the second] car . . . was consigned to the plaintiffs at Boston and not to the defendant, the shipment was not in accordance with the terms of the contract between the plaintiffs and the defendant.

"2. If the jury find that [the second] car . . . was consigned to the plaintiffs at Boston, subject to delay, and not to the defendant, the shipment was not in accordance with the terms of the contract between the plaintiffs and the defendant.

"3. That the billing of [the second] car . . . to the defendant subject to delay was not a shipment in compliance with the terms of the plaintiffs' contract with the defendant.

"4. That in making payment under the contract in question the defendant had the right to make the application as he desired.

"5. If the jury find that the defendant intended to make payment for [the first] car . . . while in fact draft on [the second] car . . . was paid at the bank through mistake and the plaintiffs were immediately notified of this mistake and told that said payment was applied by the defendant to the payment of [the first] car . . . this constitutes payment on [the first] car. . . .

"6. Payment through error of draft on [the second] car . . . by mistake did not constitute acceptance of said car.

"7. Upon all the evidence the defendant has never accepted [the second] car. . . .

"8. That if [the second] car . . . was billed to the plaintiffs and said bill of lading was not indorsed, title to said car did not pass to the defendant when the defendant's bookkeeper paid the draft on said car by mistake."

The rulings were refused. By order of the judge, a verdict was entered for the plaintiffs in the sum of $1,555.20; and the defendant alleged exceptions.

*A. L. Taylor,* (*J. W. Flett* with him,) for the defendant.

*E. A. Whitman,* (*L. Weyburn* with him,) for the plaintiffs.

BRALEY, J. The defendant on July 26, 1920, bought of the plaintiffs through brokers two carloads of potatoes, and received a duplicate or confirmation memorandum of sale, signed, "Atlantic Brokerage Company," the material terms of which read: " . . .

you have bought, and Rooney & Ely, Englishtown, New Jersey, has sold to you through us, acting as brokers Two carload of Jersey potatoes. Cost $6.00 per 150 pound sack f.o.b. loading station. Grade United States Number One. Quality Good. Shipment Monday, July 26, 1920. Route Boston, Mass., New York, New Haven & Hartford delivery. Terms Regular. Order received via Mr. McLeod. Order placed via Telephone. Remarks: We consider the above memoranda covers this order fully, and we are mailing this to you, a copy to the seller, retaining one ourselves." The plaintiffs on July 26, 1920, shipped the two carloads hereafter referred to as car one and car two. The bill of lading for car one issued by the Pennsylvania Railroad Company was marked "Straight Bill of Lading — Not negotiable consigned to Rooney & Ely advise Newsom & McLeod," the trade name under which the defendant did business, and was also marked "Abnormal conditions prevail on the lines of the carrier which will handle this shipment and it is subject to delay." The bill of lading of the second car was on the same form as that of the first car with a notation "subject to delay," but bore no indorsement by the plaintiffs and the defendant. The plaintiffs forwarded both bills to a national bank at Boston with drafts for the price attached; and the bill of lading of the first car produced at the trial by the company was indorsed on the back by the plaintiffs and the defendant. On July 29, the defendant, upon being informed of its arrival, directed his bookkeeper to go to the bank and pay the draft on the first car which was then being unloaded. But, through some oversight, he paid the draft on the second car which had not yet come in. The defendant, upon discovery of the error, notified the brokers that the "Bill of Lading read 'subject to delay,' which he did not know of," and asked them to notify the plaintiffs which they did on August 2, 1920. He also wrote the plaintiffs that the second car "billed to you flat" had not arrived and "You had a car billed open and our bookkeeper intending to pay the draft on that car, paid it on this car by mistake, therefore, we have held up the paying of the draft, on that car that was billed flat owing to this not arriving. We notice the bill of lading of this car reads subject to delay, and you billed the car to yourselves. Now, you better get after the railroad and make disposition of the car. Doubtless if it ever reached Boston, and if it does, no doubt will

be in poor condition." A bill was enclosed showing the amount of the draft on the first car with a credit of the invoice, to "rectify the error in appropriation of this payment," leaving a balance of "sixty dollars" payment of which was demanded. The second car arrived on August 6, and, the defendant having notified the brokers, they wrote the plaintiffs that the defendant "advised us that he has paid the draft on that car by mistake and so informed you, and that he intended to pay on the car he unloaded." The defendant, after notice from the carrier acting under instructions from the plaintiffs, that the second car would be delivered to him, declined to accept, and under directions from the plaintiffs the bill of lading was delivered to a third party. While these transactions were pending, the potatoes had been sold by the carrier as perishable freight, and the proceeds were in its possession at the date of the trial.

But, even if the bookkeeper had been instructed to pay for the first car, (and in what way he obtained both bills of lading is not disclosed,) it is plain, indeed the facts are not in dispute, that the defendant accepted, and took possession of the potatoes shipped in the first car, to recover the price for which this action is brought. See G. L. c. 108, § 12. *Forbes* v. *Boston & Lowell Railroad,* 133 Mass. 154, 157, 158. The shipments were to be paid for as each car arrived, under its own bill of lading, and the error of mistaken identity cannot in any way be attributed to the plaintiffs. If by shipping the potatoes the plaintiffs appropriated them to their bargain with the buyer, yet the bill of lading was not to be delivered until payment of the draft, and the defendant with knowledge of his mistake continued to exercise the rights of an absolute owner, and dealt with the property as his own. The plaintiffs, who should not be deprived of compensation because of his inadvertence, can waive the precedent condition of payment which was attached only for their own security, and treat the title as having constructively passed, and recover the price. *Merchants' National Bank of Cincinnati* v. *Bangs,* 102 Mass. 291, 295. *Libby* v. *Ingalls,* 124 Mass. 503. *Wright & Colton Wire Cloth Co.* v. *Warren,* 177 Mass. 283. Williston on Sales, §§ 283, 284. G. L. c. 106, § 52 (1). *Bellows* v. *McKenzie,* 212 Mass. 601, 604. *Bristol Manuf. Corp.* v. *Arkwright Mills,* 213 Mass. 172.

The evidence offered by the defendant to prove a custom of the

trade with reference to the acceptance of a bill of lading, and to explain the meaning of the phrase "terms regular," or the word "regular" found in the memorandum of sale, or "subject to delay" in the bill of lading, or to show how long a shipment of new potatoes in July or early in August would last without deterioration, or would show spots in a very short time, or the course of the market, or "what further did you do with reference to notifying the defendant," was excluded rightly. The mutual obligations of the parties, if any, as to the second shipment were not in issue, and, the defendant having taken and kept the first shipment without making any claim for reclamation, the inquiries as to that shipment were immaterial. *Trimount Lumber Co.* v. *Murdough,* 229 Mass. 254.

The defence of payment is unsupported by the record. *Endicott-Johnson Co.* v. *Simpson,* 206 Mass. 14.

The defendant's first, second, third, fourth, sixth, seventh and eighth requests, which related wholly to the second car, and the fifth request, that, the defendant having intended to pay for the first carload, notice of which having been given to the plaintiffs, the transaction amounted to payment of the first draft, could not have been given for reasons just stated.

The verdict for the plaintiffs having been properly directed, the exceptions should be overruled.

*So ordered.*