# WHITLOCK v. HEARD.

1. An agreement, by which mares and colts are placed with another to be fed during the winter, the stock to be liable for the expense of keeping them, and the bailee to have the power of selling them to pay the expense, does not merely give the bailee a lien on the stock for the expense of their keep, but by the terms of the contract, gives him the right to sell so much as may be necessary to discharge the debt due for their keeping. If he sell more than sufficient, it is a conversion, and for such excess he is liable in trover.

2. A purchase by the bailee himself, at a public sale by auction, is not absolutely void, but voidable at the election of the party, whose title is sought to be divested by such sale.

Error to the Circuit Court of Cherokee. Before the Hon. D. Coleman.

TROVER, by the plaintiff in error, against the defendant. In the progress of the trial, a bill of exceptions was sealed at the instance of the plaintiff, which presents the following facts. The plaintiff sent a mare, and some colts, to be wintered by the defendant, and pledged the mare and colts to the defendant to pay for their keeping, and also for another demand, with authority, on a certain contingency, to sell them to pay for their keeping, and the other demand. This other demand, was a note given by defendant to plaintiff, to enable him to raise money on, but which the plaintiff lost at gaming, and plaintiff gave defendant notice not to pay it— the note remaining in the hands of the party winning it, until payment. There was also proof tending to show, that the mare and colts were worth more than the expense of keeping them, and that the defendant advertised them, and had them sold at public auction, the defendant becoming the purchaser at said sale. Under this proof, the court charged the jury, that the defendant was not bound, under the circumstances, to pay the note, and the pledge as to the note

was void; but that the pledge of the stock for the keeping them through the winter was good.

The plaintiff requested the court to charge the jury, that if they believed, that the defendant sold more of the plaintiff's stock than was necessary to pay for the keeping of them, the plaintiff could recover the value of so many as were not necessary to pay for their keeping.

This charge was refused, and the court charged the jury, that the sale, as shown, did not amount to a sale.

WOODWARD and RICE, for plaintiff.

L. E. PARSONS, contra.

DARGAN, J.—In an action of trover, it is necessary for the plaintiff to show title to the property, an immediate right of possession, and a conversion by the defendant. The plaintiff's title to the property in this case, was not denied by the charge of the judge, but the charge was calculated to induce the belief, either that there was no conversion shown, or that the plaintiff did not have an immediate right to the possession; hence arises the necessity of examining this question. If one deliver stock, or cattle, to another, to be kept or fed, with the power to sell them to pay for their keep, will trover lie against the party to whom they are so delivered, if he convert the cattle to his own use, without tendering pay for keeping them?

It is very clear, that if a factor, or other bailee, having a lien on goods, sell them, or convert them to his own use, or destroy the goods, as by drawing out a quantity of wine from a cask, and filling it up with water, that the owner may bring trover immediately, without regard to the lien. See 19 Wend. 431, and the cases there cited. And I think that any act by a lien holder, inconsistent with the character of his possession, and denying the title of the owner, will justify the owner in bringing trover, and that such conduct on the part of the lien holder, destroys his lien. See Samuel v. Morris, 6 Car. & Payne, 620.

This view is corroborated by Mr. Chitty, in his work on Pleading, p. 152. It is there said, that if a person have

98

goods in his possession, on which he has a lien for the payment of a debt, the owner cannot bring trover without tendering the money due on the goods. But if the party being applied to for the goods, refuses to deliver them for a different reason than that he has a lien on them for his debt, and do not mention his lien, he shall not be permitted to set up his lien afterwards, to defeat the owner in an action of trover. See also Bacon's Ab. title Trover. Now the reason of this can only be, that one being applied to for the goods, the lien holder repudiated the title of the owner, denied the character of his possession, and consequently there was a clear conversion of the property. Hence, trover would lie. Had there been no express agreement in this case, that the mare and colts should be pledged to pay for keeping them, with the power to sell, if necessary, to pay for their keep, there would be no difficulty ; for the conduct of the defendant was such, as would have justified a jury in coming to the conclusion, that he held the property, not in subordination to the title of the owner, but that he had set up his own title as adverse to that of the owner, and by such conduct, his lien would have been no protection to him against this suit. But here there was an express agreement, that the stock should be liable for keeping them, with the power to sell them to pay the expenses. This is a contract, and is not a new lien, resulting from the rules of law. By the terms of this contract, the defendant had the right to sell so much of the stock as was necessary to pay what might be due to him for keeping them. If one of the horses was enough for this purpose, he should not have sold more—but proceeding to sell all of them, which was not necessary to pay the expense of their keeping, was an assumption of ownership beyond the authority conferred on him by the terms of the contract. The power to sell ceased with the extinguishment of his demand; his debt for keeping the horses being paid, he had no right to sell more, and his doing so was a conversion of that portion of the stock sold by him, which was not necessary to pay the debt due for keeping them. The circuit court therefore erred in refusing to give the charge requested, that the defendant was liable for such of the stock sold, as were not necessary to pay the amount due for keeping them.

The view here taken, is sustained by the case of Roberts v. Beeson, 4 Porter's Rep. 164. In that case it was decided, that an action of trespass would lie against a sheriff, who sold more of the defendant's goods than was necessary to pay the execution. So it has been held, that if a sheriff having a *fi. fa.* for forty shillings, sell five yoke of oxen, one yoke being sufficient to satisfy the *fi. fa.*, he may be considered as a trespasser, and sued as such, for the value of the four. See the case referred to in 4 Porter, and 20 Viner's Abr. 458.

The charge of the court as asked, admits the right of the defendant to sell enough to pay his debt, but sought to charge him for the conversion of that portion of the stock, sold after he had raised money enough to extinguish it. The court did not give this charge, because the defendant himself was the purchaser. The sale was at public auction, and the defendant the highest bidder. Such a sale is not absolutely void, but is voidable at the election of the party whose title is sought to be divested by such sale. The court should have given the charge as requested, and for the refusal so to charge, the cause is reversed and remanded.