### SCHNEIDER *v.* DAYTON.

1. LANDLORD AND TENANT — CHANGE OF POSSESSION — HOW EFFECTED.

A change of possession of a stock of merchandise from the merchant to the owner of the store building is effected, where the latter, on being informed by the merchant that he has sold the goods, and that he claims no further interest therein, acquiesces in a surrender of the lease, and thereafter watches and cares for the goods during litigation between the former tenant and the alleged purchaser.

2. SAME—WAREHOUSEMEN—LIENS.

Although the landlord, to whom possession is so surrendered, may not be a warehouseman within the meaning of the statute, he is entitled to a lien as such as against the tenant, where he immediately advises the latter that he will make a claim for storage if the goods are not removed.

3. LIENS—EXECUTION LEVY—TITLE.
   Where it appears, in a proceeding to restrain an officer from
   interfering with the possession of goods held for storage
   charges, that the title to the goods was in a married woman,
   and that the officer levied thereon under an execution run-
   ning against her husband, a decree establishing the lien for
   storage cannot be complained of by the officer.

Appeal from Ingham; Person, J.   Submitted October
21, 1896.   Decided January 5, 1897.

Bill by Fred Schneider against Sarah M. Dayton, Wil-
liam B. Stone, and Carl J. Loomis, to enforce a lien
for storage.   From a decree for complainant, defendant
Loomis appeals.   Affirmed.

*Cahill & Ostrander*, for complainant.

*Arthur D. Prosser*, for appellant.

LONG, C. J.   The bill in this case was filed to enforce
a lien claimed by the complainant on a quantity of goods
stored in his building, in the city of Lansing, this State.
The complainant is the owner of the building, which, for
a term of years, was rented to George M. Dayton as a
dry-goods and millinery store.   Some time prior to Janu-
ary, 1895, the title to these goods had been transferred by
mortgage foreclosure to his wife, Sarah M. Dayton, one
of the defendants in this case.   On or about the 5th of
January, 1895, some arrangement was made by which
Mrs. Dayton sold, or agreed to sell, the stock of goods to
defendant Stone.   During the taking of an inventory,
Mrs. Dayton and Mr. Stone had some misunderstanding
or dispute in reference to what the terms of the contract
were, when the store was locked up, and the key deposited
in the People's Savings Bank, of that city.   There was a
considerable quantity of goods in the store, both on the
main floor and in the basement.   The complainant's
claim is that about January 5, 1895, Mr. Dayton, acting
for his wife, notified the complainant that the goods had

been sold to Stone; that the lease was surrendered, and that complainant must look to Stone thereafter for his rent; that, after spending some days in taking an inventory of the goods, Stone went away, declaring that he would not take them; that the Daytons claimed he must take them, and litigation ensued; that both the Daytons and Stone disclaimed any interest in the goods, refusing to take them away, and they were left in the store. The complainant thereupon had a talk with Mr. and Mrs. Dayton, in which he directed them to take the goods away, and told them that, if they did not, he should claim a lien on them for storage. They claimed not to own the goods, and stated that they surrendered their lease. It is admitted that the Daytons gave no express assent that the complainant should have a lien if the goods remained there, but they left the goods, and never removed them. Complainant thereafter caused a notice to be served upon Stone of what the Daytons claimed. The complainant claims that, while the goods remained in the store, he kept watch over the store to see that it was properly fastened up. While the goods were so in storage, and in January, 1896, the defendant Carl Loomis, who is a deputy sheriff of Ingham county, levied an execution upon them for the sum of $1,230. The execution was issued in favor of Clarissa Byam against George M. Dayton. It is not shown from the record just how Loomis obtained admission to the store to make this levy, but it is apparent that it was not with the consent of the complainant.

The complainant claims that, under these circumstances, he held the goods as warehouseman; and he offered proof tending to show that the storage of the goods was worth at least $50 per month, and asked an accounting for the amount of his claimed lien, and also for an injunction against defendant Loomis, restraining him from interfering with the possession of the goods, or with his (complainant's) lien thereon, until such amount should be first paid. Upon the filing of the bill in the court be-

low, an injunction was issued, as prayed, against Loomis, and on the hearing the court entered a decree finding that on January 5, 1895, Sarah M. Dayton was the owner of the goods in question; that she never parted with such title or ownership; that on January 5, 1895, she surrendered all her rights as a tenant in said store to the complainant, and at the same time left such goods and property in said store, and permitted the same to be stored there, after being notified by complainant that he would claim a lien thereon for his charges for storage. The court thereupon found that the complainant had a lien upon the goods, and that $50 per month was a reasonable charge for such storage, and payable so long as said goods remained in said store, and that defendant Sarah M. Dayton, or any of the defendants, might pay to the complainant the amount of such storage, but that, in default of such payment, the goods should be sold to satisfy such claim of lien; that the cost of the proceedings should also constitute a lien upon the goods. No personal decree was rendered against any of the defendants. From this decree, defendant Loomis alone appeals. It is contended by his counsel:

1. That there is no evidence upon which the court below could base a decree for complainant.

2. That the store in which the goods were stored is not a warehouse, and the complainant not a warehouseman, within the contemplation of the law governing and regulating warehouses and warehousemen.

3. That, at the time of the levy of the execution, the possession of the goods, as well as of the alleged warehouse, was in George M. Dayton.

4. That a verbal lien cannot be created, as against creditors.

5. That the complainant is estopped from claiming a lien, because it was his duty to advise Mr. Stone of his claim at the time he contemplated taking the goods from George M. Dayton, and that it was also his duty to advise defendant Loomis of his claim at the time the levy was made.

The contention that there has been no change of pos-

session of the goods from the Daytons to the complainant, we think, is settled the other way by the evidence. The complainant asked that the goods be removed. Mr. and Mrs. Dayton both disclaimed any ownership in them, and insisted that the title had been transferred to Mr. Stone. They refused to have anything further to do with them, and claimed that they would be no longer bound by the lease. Apparently, the complainant acquiesced in the surrender of the lease, and made no further claim under it. He then notified Stone of the situation, but it is apparent that Mr. Stone made no claim to the goods, and he was not bound, by any contract with complainant, to pay rent or storage. The complainant was then put in the position of having the goods in his store with no party claiming ownership of them. He then asserted to the Daytons that he would insist upon a lien for storage. From that time forth he was the only person having possession. The only change of possession that could be made was the care and oversight which the complainant exercised; and, under the circumstances here, we think it was sufficient to put the goods into the possession of the complainant. The store was locked up. It was complainant's store, and the lease under which the Daytons held had been surrendered by them.

While in fact the complainant may not have been· a warehouseman, under the provisions of chapter 58, 1 How. Stat., and Act No. 220, Pub. Acts 1895, as being employed in the business of a warehouseman, yet, as between himself and the Daytons, he had asserted his rights as such, and had made a claim of lien for storeage. As between those parties and himself, his lien was perfect, as it seems to have been assented to by the Daytons, inasmuch as they did not remove the goods.

It is to be remembered that the claim asserted by defendant Loomis is that the goods were the property of Mr. Dayton, and the execution ran against him, and the levy was made by Loomis upon the goods as the property of Mr. Dayton. But the court found that

they belonged to Mrs. Dayton. The proofs support this finding. There was no evidence in the case that they did not belong to her. The court found that complainant had a lien. From this decree Mr. and Mrs. Dayton have not appealed. The goods belonging to Mrs. Dayton, defendant Loomis, under these circumstances, was not in a position in the court below, and is not in a position here, to assert any claim under his levy of execution, as he could not take the property of Mrs. Dayton to satisfy the debt of Mr. Dayton. The Daytons not having appealed, the decree, as to them, must stand; and, as to defendant Loomis, it must stand for the reason, among others, that the goods do not belong to Mr. Dayton, against whom defendant's execution runs. Complainant will recover his costs of this court against defendant Loomis.

The other Justices concurred.