MARY E. LEWIS vs. FRED O. GRAY.

Franklin. Opinion April 22, 1912.

*Bailment. Lien for Storage.*

A person, not an inn-keeper or warehouseman, nor in the business of storing goods, who permits the property of another to remain on his premises under an agreement that storage is to be paid, but without any agreement for a lien, has no lien for the storage at common law.

*Held:* That a ruling that the defendant was entitled to a lien for the storage of certain hay if there was an understanding or agreement between the parties that the storage was to be paid for, was erroneous and that the defendant had no such lien at common law.

On exceptions by plaintiff. Sustained.

Trover for the alleged conversion of certain pressed hay. Plea, the general issue with a brief statement as follows: "That he retained possession of the hay which he then had in possession at

the time of the alleged conversion and refused to deliver same to plaintiff on demand for the reason that defendant had a claim for storage of said hay, and by reason of said claim for storage a lien on the same to enforce collection of same, which claim for storage plaintiff refused to pay prior to the demanded delivery." Verdict for defendant. The plaintiff excepted to certain rulings.

The case is stated in the opinion.

*Frank W. Butler,* for plaintiff.

*Elmer E. Richards,* for defendant.

SITTING: WHITEHOUSE, C. J., CORNISH, KING, BIRD, HALEY, HANSON, JJ.

KING, J. Action of trover for the value of a certain quantity of pressed hay. It appears from the exceptions, that the plaintiff was the owner in 1907 of an undivided half of a farm; that the hay in question was cut that year on the farm, pressed, and stored on the premises; that in 1908, the plaintiff sold and conveyed her half of the farm to her co-tenant, and thereafter the co-tenant sold and conveyed the farm to the defendant, the pressed hay still being stored thereon; that after the defendant came into possession of the premises he notified the plaintiff to remove the hay, and that if it remained there storage would be claimed; and there was some evidence introduced tending to show an agreement to pay storage. The question was, whether the defendant had a lien on the day for storage after his notice that storage would be claimed.

The presiding Justice gave the jury explicit instructions relating to the question whether there was a contract on the plaintiff's part to pay storage, and then said:

"If they did come to an understanding—if a proposition was made, and assented to by her, that storage should be paid from that time—then I give you this rule, as it lies in my mind at present, that the defendant would be entitled to retain possession of that hay until a fair reasonable price for the storage was made or tendered. We have a class of cases on the subject of liens where things are put into the possession of another to do something to them—to mend them, or repair them, or do work upon them—in which case the one who does the work is entitled to retain them until pay for the work is made to him. And I think, and so rule to you, and it

will be your guide in this case, that where one places a thing to be kept, to be stored for pay, under an agreement or an understanding that it is to be paid for, that he is entitled to keep it until he is paid."

It is not claimed that the defendant had any statutory lien, nor that he had any lien on the hay by virtue of any express contract therefor in the nature of a pledge. Did he have a common law lien, so called—a lien arising under the rules of the common law? We think not. It is quite impossible to find uniform rules by which it may always be determined when a common law lien results. "Derived from the civil law, and founded on considerations of equity and justice, the rules by which they are governed vary with the grounds on which such rights are given." *White* v. *Smith*, 44 N. J. L., 105, 106.

Particular liens have always been admitted, by the common law, in favor of those persons, such as innkeepers, farriers, common carriers and warehousemen, who are bound by law to serve the public in their trades and occupations. And the privilege of a particular lien—the privilege to detain and hold the possession of some particular property of another as security for some debt or obligation, has been extended to other persons, in a variety of cases, where such persons by their labor and skill have imparted an additional value to the goods. This includes artizans, tradesmen, mechanics and laborers who receive property (although not obliged to receive it) for the purpose of mending, repairing and improving its condition for hire, and they have, by the common law, a lien on such property until the reasonable charges for their labor and expenses thereon are paid. But the defendant, under the facts in this case, cannot be classed with those persons who are allowed liens because they are bound by law to receive and care for the goods of others. He was under no obligation to permit the hay to remain on his premises. He was not a warehouseman, nor in the business of storing goods. He was, at most, a voluntary bailee of the hay under an agreement with the owner that he was to be paid reasonable compensation for its storage. Nor can he be reasonably classed with those persons who are given liens on specific property which has been enhanced in its intrinsic value by their skill and labor bestowed upon it. True, the storage of the hay may properly be regarded as beneficial to its owner, for it may have preserved it

from deterioration and destruction, but we do not think it can be held that by the mere storage of the hay the defendant has added to its intrinsic value and thereby become entitled to a lien on it under the application of this rule of the common law.

As suggested above, any effort to subject common law liens to uniform rules is necessarily unsatisfactory, and therefore it becomes most important, in the determination of whether or not a lien should be admitted in any given case, to examine and consider judicial precedents.

Our attention has not been directed to any case, and we have found none, in any jurisdiction, which decisively admits a lien under facts and circumstances like those in the case at bar. Mr. Lummus, in his recent work on liens cited by defendant, says: "There seems to be no good reason for limiting the lien to persons making a business of acting as warehousemen. It seems that any person having possession of the goods and a valid claim for storing them ought to have a lien." Sec. 73. No authorities, however, are cited which directly support that proposition. In sec. 76 he cites *Schnider* v. *Dayton*, 111 Mich., 396, as an authority for a lien where notice was given that storage would be charged, and the owner of the goods made no reply. But we find upon examination of the report of that case, that the notice to the owner of the goods was that the landlord "would insist upon a *lien* for storage," and the court held, that inasmuch as a lien for the storage was claimed in the notice, and the owner did not remove the goods, the lien was assented to.

In *Whitlock Co.* v. *Holway*, 92 Maine, 414, cited by the plaintiff, this court said: "But, in the absence of any agreement, the common law does not give to a person, not an innkeeper or warehouseman, a lien on personal property for its storage." It is suggested that the above quoted statement is only a dictum, as the case did not really involve that question. There may be merit in that suggestion, for that was a case where a tenant left on the premises a machine the title to which was in the plaintiff, and the question was, whether under those circumstances the landlord had a lien on the machine for its storage. But if that statement be only a dictum it is, we think, a correct statement of the law as understood and applied by this court, and also in accordance with judicial precedent elsewhere.

In *Allen v. Ham*, 63 Maine, 532, it was held, that a livery stable keeper, who had a horse in his possession which he had been keep-

ing under an express contract with the owner of the horse to pay one dollar per day for its care and keeping, had no lien at common law on the horse for any care and keeping furnished prior to the passage of the Act of 1872, c. 27, which provided a statutory lien for pasturing, feeding and sheltering animals. The court there said: "Not being an innkeeper, or farrier, or trainer, he has no such lien by the common law. *Miller* v. *Marston,* 35 Maine, 153. He has none by any agreement with the respondent amounting to a pledge."

This court having thus held that a stable keeper had no lien at common law for stabling and feeding a horse under an express agreement to pay therefor, a fortiori must it be held that a person, who is not a warehouseman, nor in the business of storing goods, but who permits the property of another to remain on his premises, under an agreement that storage is to be paid, has no lien therefor at common law. *Stoddard* v. *Crocker,* 100 Maine, 450 may be cited as holding by implication that only warehousemen have a lien at common law for storage.

In Jones on Liens, sec. 968, it is said: "In some states a person not a warehouseman, and not in the business of storing goods, has no lien on goods for his compensation for storing them, unless there be an express agreement for a lien, or it is the legal duty of one to receive and hold the goods. A mere volunteer, under no obligation, who accepts the temporary custody of goods, without any agreement for a lien can claim none for his compensation."

In re Kelley, 18 Fed. Rep., 528, (District Court, S. D. N. Y.) it is said: "The authorities in this State hold that a person not being a warehouseman, nor in the business of storing goods, who has articles on private storage, has no lien upon them for his compensation any more than a landlord has on his tenant's goods for rent." See also *Grinnell* v. *Cook,* 3 Hill, 485; *Rivara* v. *Ghio,* 3 E. D. Smith, 267, 268; *Merritt* v. *Peirano,* 10 App. Div. N. Y. 563; *White* v. *Smith,* 44 N. J. L., 105, 109; *Preston* v. *Neale,* 12 Gray 222.

If it be said that considerations of equity and justice seem to require that there should be a lien wherever a valid claim for storage exists, the answer may be made that such a lien can always be provided for by contract between the parties, and it may be created by legislative enactment. ·

It is therefore the opinion of the court that the ruling at *nisi prius,* that the defendant was entitled to a lien for the storage of the hay if there was an understanding or agreement between the parties that the storage was to be paid for, was erroneous, and accordingly the entry must be,

*Exceptions sustained.*