## OTHOUDT v. ADDISON FUR CORP.

1. ANIMALS—LIENS—CARE AND KEEP—AGISTMENT—COMMON LAW.
   At common law, an agister who kept and cared for animals had no lien for their keep, in absence of special agreement, except where animal was trained for racing, and for medical treatment, etc., on theory that there was improvement of object bailed.

2. SAME—STATUTES.

3 Comp. Laws 1929, § 13194, providing for lien for keep of certain animals, does not apply to animals other than those described in section 13186.

3. SAME—CONTRACT FOR KEEP—LIENS—FOXES.

Contract for keep and care of foxes, providing that neither they nor their increase should be removed from ranch until ranching fees had been paid in full, and providing further that ranch owner had right to sell any of said foxes to pay said fees, *held*, to create lien.

4. LIENS—CONTRACTS.

Lien created by express or implied contract is enforceable.

5. ANIMALS—CARE AND KEEP—LIENS—IMPLIED CONTRACT.

Where contract for care and keep of foxes, and creating lien therefor, expired at end of year, and thereafter fox owners failed to remove foxes or pay fees, there was implied agreement on their part to pay fees on same terms as had previously been agreed upon, including lien therefor.

6. ESTOPPEL—ACQUIESCENCE—LIENS—ANIMALS—CARE AND KEEP.

Where owners of foxes allowed them to remain on ranch for several years after expiration of contract for their care and keep without paying therefor, their conduct amounted to acquiescence and implied consent to lien, and they are estopped from claiming otherwise.

7. CONVERSION—FOXES—ANIMALS—CARE AND KEEP—REFUSAL TO DELIVER.

Where owners of foxes allowed them to remain on ranch for several years after expiration of contract for their care and keep without paying therefor, and ranch owner never refused to give them up on payment of charges, there was no conversion.

Appeal from Jackson; Simpson (John), J. Submitted January 18, 1933. (Docket No. 39, Calendar No. 36,934.) Decided April 4, 1933.

Case by Charles V. Othoudt and another against Addison Fur Corporation, a Michigan corporation, for conversion of foxes. Judgment for defendant. Plaintiffs appeal. Affirmed.

*J. Earle Brown (Kenneth D. Wilkins* and *H. W. Glassen,* of counsel), for plaintiffs.

*Burney E. Brower,* for defendant.

BUTZEL, J.   Charles V. Othoudt and E. Pearl Othoudt invested $4,000 in two pairs of silver black foxes, claimed to be of a particularly fine strain.   It was expected that there would be a large profit made from their increase.   Plaintiffs ranched the foxes at one of the fox farms of defendant Addison Fur Corporation.   Two contracts were entered into, one referring to the increase from the foxes, and the other, dated October 1, 1927, referring to a ranching fee of $150 per year for each pair of foxes.   The latter contract contained the following provisions:

"Neither said foxes nor the benefits accruing to second party under any pooling agreement shall be removed from said ranch until said ranching fees shall have been fully paid and satisfied and if said second party neglects or refuses to pay said ranching fees within 15 days after the same or any part thereof shall have become due, then in addition to its other remedies, said first party may offer said foxes and/or said benefits for sale (at either private or public sale) and may dispose of the same for the best price that may be secured, and deduct from the money so received the amount of such ranching fees and pay the remainder over to the second party or it may put such remainder to the account of said second party in any bank in the village of Evart or city of Jackson, Michigan.

"Said ranching fees shall not abate nor be diminished by virtue of the death and/or escape of said foxes and/or their offspring inasmuch as this contract is a part of and subject to the standard pooling agreement.   *   *   *

"It is further agreed that this agreement shall expire on October 5, 1928, unless prior to October 1,

1928, a further written agreement for ranching after said expiration date is entered into."

Plaintiffs paid the ranching fee for the year ending October 1, 1928. In a letter dated November 13, 1928, urging plaintiffs to trade their foxes for shares of stock in National American Furs, Inc., defendant stated:

"RANCHING FEES DUE UP TO OCTOBER 1, 1928.

"That no exchange of foxes for stock can be completed nor can animals be removed from the ranches until all ranching fees due are paid."

Plaintiffs made no objection to this provision in the letter nor did they, prior to the commencement of the present proceedings, on September 15, 1931, demur or object in any manner to the demand for payment of the ranching fees as provided, or to the lien asserted by defendant on the foxes and their increase. The foxes required food, shelter, and care. Plaintiffs, by their own testimony, showed that their aim was to obtain a cash settlement for the foxes and their increase. They frankly stated that they wanted neither the foxes nor stock in the corporation, but desired a return of their money. The testimony further shows that defendant at no time refused to give up the foxes upon payment of the charges for their care. Plaintiffs brought the instant suit in trover for the value of the foxes. Defendant, in its answer, denied that it had ever refused to turn over the foxes to plaintiffs upon payment of the charges due for which it claimed a lien.

The trial judge held that defendant never claimed to own the foxes, but only sought payment for their keep, while plaintiffs desired that defendant take the foxes off their hands and pay for them; that under the most liberal construction of all of the testimony, plaintiffs had not established or main-

tained any conversion on the part of the defendant. The record fully sustains the judge's opinion. Plaintiffs appeal from a judgment of no cause of action.

Plaintiffs claim that defendant was not entitled to the lien which it was asserting, and, therefore, a demand for the return of the foxes was unnecessary to establish a conversion. At common law, an agister who kept and cared for animals of any kind had no lien for their keep, unless one was created by special agreement. There was a lien, however, when the animal was trained for racing, and for medical treatment, etc., on the theory that there was an improvement of the object bailed. But this did not extend to the ordinary expenses of keeping and feeding. *Towle* v. *Raymond,* 58 N. H. 64. Evidently there was no fox farm industry when 3 Comp. Laws 1929, § 13186, was first adopted, for it only entitled one to a lien for the care of horses, mules, neat cattle, or swine. 3 Comp. Laws 1929, § 13194, providing for a lien for additional expenses incurred in the keeping of property against which a lien has been properly asserted and remains unpaid, refers only to the lien theretofore provided for in section 13186, *supra,* although the statute refers to horses, cattle, sheep, swine or "other beasts." A careful analysis of the wording of section 13194, *supra,* shows that it does not apply to animals other than those described in section 13186, *supra.*

We believe, however, that in the present instance there was a lien created by special contract. A lien created by express or implied contract will be enforced. *Whitlock* v. *Heard,* 13 Ala. 776 (48 Am. Dec. 73); *McCoy* v. *Hock,* 37 Iowa, 436. The contract of October 1, 1927, distinctly provided for a lien, although it also stated that the agreement should expire within one year. Plaintiffs claim that all of the

terms of the contract became ineffective at the end of the year, and that, therefore, no lien continued in existence. The contract did expire at the end of the year to the extent that, after that time, the obligation to keep the foxes was no greater than that of plaintiffs to ranch the foxes with defendant. We believe, however, that there was an implied agreement on the part of the plaintiffs to pay for the ranching of the foxes on the same terms as had been previously agreed upon, including a lien for charges accruing while the foxes remained with defendant.

On November 13, 1926, shortly after the expiration of the year term, defendant notified plaintiffs that the animals could not be removed from the ranch until all ranching fees due were paid. Plaintiffs made no effort to claim their property, but continued to permit the foxes to remain in defendant's care for several more years. They knew that they were wild animals, which could not be set at large, but required care and attention at a large expense. Plaintiffs' conduct was such that it amounted to an acquiescence and implied consent to a lien, and they are now estopped from complaining. See *Schneider* v. *Dayton,* 111 Mich. 396. They are entitled to the foxes and their increase upon payment of the charges due. There was no conversion by defendant.

The testimony brought out the fact that defendant had thought it advisable and necessary to pelt some of the increase. The decision in this case is without prejudice to any claim that plaintiffs may have arising out of such pelting.

The judgment is affirmed, with costs to defendant.

McDONALD, C. J., and CLARK, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.