61 So.2d 459

**JACKSON v. CANTRELL.**

8 Div. 990.

Court of Appeals of Alabama.

Oct. 28, 1952.

H. G. Bailey, Boaz, and Finis E. St. John, Cullman, for appellant.

H. H. Conway, Albertville, for appellee.

HARWOOD, Judge.

The complaint below contained two counts. Count 1 claimed $805.75, due from defendant for goods, wares, etc., and count 2, as amended, claimed the same amount due as the purchase price of 16,115 pounds of cotton seed, at $5 per hundred pounds, or $100 per ton, etc.

The defendant filed a plea of res judicata, to which plaintiff's demurrer was sustained.

The demurrer was properly sustained since the plea failed to assert a final determination of the issues by judgment entered.

The defendant then filed a plea of tender, asserting that he had tendered to the plaintiff $560.07, and that he now brings the money into court.

The defendant also filed a plea of set-off, asserting that at the time this action was commenced the plaintiff was indebted to him in the sum of $165 for ginning cotton in the months of September, October, November, and December 1947.

The plaintiff filed answers to each plea and issue was joined.

The jury returned a verdict in favor of the plaintiff and fixed his damages at $560.-

07. The court entered a judgment pursuant thereto, stating that such sum was the amount of the tender made by the defendant.

His motion for a new trial being overruled, the plaintiff below perfected his appeal to this court.

It appears from the evidence that the plaintiff below rented farm lands to some five tenants, and under the leases the tenants were to respectively pay as rent a certain number of bales of cotton weighing 500 pounds each and the seed therefrom.

On September 18, 1947 the plaintiff wrote the defendant, who operated a gin, giving him a list of his tenants, and the number of bales of cotton with the seed therefrom, that each tenant was to pay as rent.

The letter closes with the following paragraph:

"Tag this cotton in my name and deliver it to the Walker Warehouse in Albertville and issue a seed ticket in my name and hold there subject to my call. Please say on the tag and on the seed ticket what tenant it came from. Ginning is to be paid by the tenants."

Some 22 bales of cotton belonging to the tenants mentioned in the plaintiff's letter of September 18, 1947 were ginned at defendant's gin during the fall and winter of 1947–48. The number of bales due plaintiff as rent were handled without controversy. The seed from these rental bales amounted to 16,115 pounds, and were held by defendant on his premises on plaintiff's account.

The ginning costs on all the cotton brought to defendant's gin by plaintiff's tenants amounted to $165. These costs were not paid by the tenants, and are yet unpaid.

It is inferable from the record that the defendant offered to buy the cotton seed from the plaintiff at $90 per ton, and that the offer was agreeable to the plaintiff.

Thereafter, the defendant forwarded to the plaintiff a check dated November 22, 1947 in the amount of $560.07.

This check was returned to the defendant by the plaintiff with the following letter, dated November 26, 1947:

"Dear Mr. Cantrell:—

"Your letter of the 22nd with enclosure is received.

"I am returning for the reason that the amount is incorrect your check for $560.07 in settlement for 16115# cotton seed @ $90.00 per ton left with you by my tenants for my account. You have made the mistake of charging me with the ginning when you should have collected from the man who brought the cotton to your gin. Isn't it your responsibility to collect your ginning from the man who brings the cotton to you to gin? I took the precaution to explain to you at the beginning of the season that my tenants were paying *beled* cotton rent and the seed therefrom and I told *you then that the tenants were to pay* the ginning. You should have collected the ginning from every one of them as they brought the cotton to you. If they felt they were due any adjustment, it was up to them to come to me. I hope you will let me have settlement for my seed without further delay; otherwise you may consider my offer to sell you my seed at $90.00 withdrawn.

"With assurances of my high esteem, I am, with best wishes."

The price of cotton seed was advancing during the fall of 1947, and defendant on February 14, 1948 wrote to the plaintiff:

"Dear Mr. Jackson:

"Inclosed is a check for $640.64 for payment of your seed at $100.00 per as settlement.

"I am."

The defendant's check was returned to him by the plaintiff on February 17, 1948 with this letter:

"Dear Mr. Cantrell:—

"I am in receipt of your check for $640.64 which you claim is in full settle*meny* of seed account.

"My entire file in connection with this matter is with Col. F. E. St. John,

Cullman, so your check must be accompanied with an itemized statement of the account. If you have made no deductions for ginning which you should have collected from my tenants and the check covers the seed left with you in trust for my account in full at $100.00 per ton, you can return the enclosed check with an itemized statement. Otherwise, you need not return the check as. I do not consider you have any legal or moral right to take my seed to pay for the ginning due you by the man who brought the cotton to your gin."

In connection with the transaction the defendant testified as follows on dircet examination:

"Q. At the price of $90.00 a ton, that was all you owed him less the ginning? A. Yes.

"Q. When he filed this suit against you, did you pay that much money into this clerk here? A. Yes.

"Q. Later on, to avoid a controversy, did you offer him more? A. Yes.

"Q. That was $640.64? A. At $100.00 a ton less the ginning.

"Q. That was not what you owed him? That was to avoid a controversy? A. It was to get it over with.

"Mr. St. John: We object to that and move to exclude it.

"The Court: Sustain the objection. That is excluded.

"Q: You didn't actually owe him that $640.00 according to the agreement, did you? A. That's right."

However on cross examination the defendant testified:

"Q. You bought his seed, didn't you? A. I don't know whether I have or not. I tried to.

"Q. You offered him $100.00 per ton and you are willing to pay him $100.00 per ton for the seed now and you were at that time? You were willing to pay him $100.00 per ton, that was your agreement? A. That was one agreement.

"Q. That was the last agreement before this suit was filed? That was the last agreement? A. Yes."

It is clear from the above facts that the defendant, by notice contained in plaintiff's letter of September 18, 1947, was specifically informed as to facts indicating the possible existence of a landlord's lien provided for in Section 15, Title 31, Code of Alabama 1940. Furthermore, the plaintiff, in said letter specifically notified the defendant ginner that the tenants were to pay the costs of ginning the cotton grown on plaintiff's land. These facts necessitate the conclusion that no lien, superior to the plaintiff's landlord's lien was ever acquired by the defendant ginner.

It is fundamental that with the exception of innkeepers, where special considerations apply, no person can acquire a lien on the goods of another except by the latter's consent given expressly or impliedly, either by himself or through some third person authorized to act in his behalf. The law abhors creating interests in property without the consent of the owner thereof. See Brown, Personal Property, Section 111.

The plaintiff's letter of September 18, 1947, completely negatives the idea that he had consented that a lien attached to his cotton ginned by the defendant, or to the seed therefrom, or that he had authorized any third parties to consent for him. Further, no agreement, express or implied, can be deemed to have been entered into by the plaintiff to pay these ginning charges. In fact he expressly repudiated any liability on his part for such charges.

The defendant's plea of set-off based upon defendant's claim of plaintiff's liability for payment of the $165 ginning costs was therefore unsupported by any fact.

The plaintiff's claim as set forth in his complaint was upon the alleged agreement to sell the cotton seed at $100 per ton. The defendant's plea of set-off admitted the validity of the contract and defendant's liability to answer for damages resulting from breach of the contract as alleged. St. Louis & T. R. Packet Co. v. McPeters, 124

Ala. 451, 27 So. 518; May Hosiery Mills v. Munford Cotton Mills, 205 Ala. 27, 87 So. 674.

As to the plea of tender, the tender of $560.07 was obviously insufficient and therefore ineffective to support such a plea. Ebersole v. Addington, 156 Ala. 575, 46 So. 849; Decker v. State National Bank, 255 Ala. 373, 51 So.2d 538.

For the above reasons it is our conclusion that the lower court erred in denying plaintiff's requested charges 1 and 3, which were affirmative in nature, and in refusing plaintiff's requested charge 2, which was affirmative in nature as to the plea of tender.

Reversed and remanded.