MINNEHOMA FINANCIAL COMPANY,
a Delaware Corporation, Appellant
(Plaintiff below),

v.

Adam C. PAULI, Jr., Appellee (One of
defendants below).

MINNEHOMA FINANCIAL COMPANY,
a Delaware Corporation, Appellant
(Plaintiff below),

v.

Joe E. COULTER, Appellee (One of
defendants below).

No. 4737.

Supreme Court of Wyoming.

June 14, 1977.

Ted Simola, Cheyenne, for appellant.

Dan J. Pauli and Bob C. Sigler, Torrington, for appellee Adam C. Pauli, Jr.

Franklin D. Bayless, of Trierweiler, Bayless & Mockler, Cheyenne, for appellee Joe E. Coulter.

Before GUTHRIE, C. J., and McCLINTOCK, RAPER, THOMAS and ROSE, JJ.

ROSE, Justice.

The principal question presented by this appeal is whether a mobile home park operator is entitled to a storage lien, under § 29–115, W.S.1957, C.1967, on a mobile home which is abandoned on his property by a tenant. We will hold that he is entitled to a lien and thereby affirm the decision of the trial court. We will also deny the appellees' motion to dismiss the appeal.

Appellant-Minnehoma Financial Company initiated this action against Appellees—Adam C. Pauli, Jr., and Joe E. Coulter for conversion of a mobile home in which appellant had a security interest. Pauli asserts that he has a valid storage lien in the mobile home which had been abandoned on his property by the owner-tenant, and that this lien has been properly foreclosed, resulting in the lien sale of the home to Coulter.

The district court entered summary judgments in favor of Pauli and Coulter, finding generally that the storage lien and subsequent lien sale were valid as a matter of law; that there were no material issues of fact; and that appellant was barred from bringing its conversion action by the doctrine of laches.

On appeal, appellant asserts three contentions: (1) That appellees were precluded from obtaining summary judgments because of alleged violations of certain motor vehicle laws; (2) that an implied request to store is an insufficient basis for valid storage lien; and (3) that the foreclosure proceedings herein were not timely commenced under the statutes. Appellees have moved to dismiss the appeal for failure to comply with Rule 75(c), W.R.C.P., and for failure to contest the district court's finding of laches.

In 1972, the mobile home in question was purchased in Texas by J. O. Barton, and a Texas certificate of title issued in his name, subject to appellant's lien. In 1973, the home was sold in Texas to Henry and Marjorie Guest, subject to appellant's security interest therein. The Guests' credit application indicated that their payment book and insurance policies should be forwarded to Route 3, Box 573, Space No. 6, Cheyenne, Wyoming. The record does not indicate whether a new certificate of title was issued to the Guests. On February 10, 1974, the Guests rented a trailer space from Pauli, located at the above-mentioned address and made their last payment to appellant on March 5, 1974, giving their address as Pauli's trailer park. On or about May 10, 1974, the Guests vacated the mobile home and left no forwarding address. Pauli, after an inventory and inspection by the Laramie County Sheriff's office, on August 25, 1974, moved the home to an adjacent area where he stored it until May 3, 1975. During the intervening time, Pauli and his attorney made numerous efforts to locate the Guests and to determine any encumbrances on the home, including a search of the Laramie County records and a National Crime Information Center check by the Laramie County Sheriff's office. All efforts were fruitless. Appellant had not filed a security agreement or financing statement in Wyoming.

On March 24, 1975, Pauli mailed a notification of a storage lien and intent to sell the home to the Guests' last known address but it was returned unclaimed. On April 10 and 17, 1975, Pauli's attorney published a notice of lien sale in two newspapers of general circulation in Laramie County. On May 3, 1975, at the lien sale, the home was sold to the highest bidder, Joe Coulter, for $1,100.00. Coulter claims to have had no actual or constructive knowledge of appellant's interest in the home. The balance of money paid, after storage charges and costs of the sale were deducted, was deposited for the benefit of whoever might later be shown to be entitled thereto.

On February 3, 1976, appellant-financing company initiated this action against the appellees, upon whom service was had, and also upon the Guests, who were never located. Subsequently, Coulter and Pauli filed motions for summary judgment, with affidavits attached. On the day of the hearing on said motions, June 7, 1976, appellant filed answers to interrogatories propounded by Pauli and an affidavit which was discounted as not in compliance with Rule 56, W.R.C.P. Both motions for summary judgment were granted, resulting in this appeal.

## APPELLEES' MOTION TO DISMISS

We will first consider the propriety of appellees' motion to dismiss the appeal for non-compliance with Rule 75(c), W.R.C.P. Rule 75(c) provides:

"(c) Statement of the Evidence or Proceedings When No Report Was Made or When the Transcript is Unavailable. If no report of the evidence or proceedings at a hearing or trial was made, or if a transcript is unavailable, the appellant *may* prepare a statement of the evidence or proceedings from the best available means, including his recollection. The statement shall be served on the appellee, who may serve objections or propose amendments thereto within ten days after service. Thereupon the statement

and any objections or proposed amendments shall be submitted to the district court for settlement and approval and as settled and approved shall be included by the clerk of the district court in the record on appeal." [Emphasis supplied]

Appellees argue that without a transcript or statement of the proceedings had on June 7, 1976, it is impossible to determine which of appellant's issues on appeal were raised below. It seems this argument is particularly aimed at appellant's contention that appellees violated certain motor vehicle laws.

▆▆▆ Rule 75(c), W.R.C.P, is virtually identical to Rule 75(c), F.R.C.P, which was abrogated in 1968, when the Federal Rules of Appellate Procedure were adopted and there are persuasive federal cases construing this section. The use of Rule 75(c) is permissive, not mandatory. *Jaconski v. Avisun Corporation*, 3 Cir., 359 F.2d 931, 936 (1966). As a result, an appeal cannot be dismissed merely because of appellant's failure to take advantage of Rule 75(c).[1] However, it should be noted that the failure to use this optional procedure may have adverse effects on an appeal. See *Kayo Oil Company v. Sammons*, 5 Cir., 321 F.2d 729, 731 (1963).

Related to appellees' argument is the fundamental rule, applicable to appeals from summary judgments, that parties may not advance new theories or issues in order to secure a reversal of the lower court's determination. Theories or issues which are not apparent or reasonably discernible from the pleadings, affidavits and exhibits will not be considered. 10 Wright & Miller, Federal Practice and Procedure: Civil § 2716, at 435–436 (1973). In reviewing the record on

appeal from the granting or denial of a summary judgment, we must look at the record from a viewpoint most favorable to the party opposing the motion. *Tri-State Oil Tool Industries, Inc. v. EMC Energies*, Wyo., 561 P.2d 714 (1977); *Shrum v. Zeltwanger*, Wyo., 559 P.2d 1384 (1977); and *Bluejacket v. Carney*, Wyo., 550 P.2d 494 (1976). Additionally, when a motion for summary judgment is before us, we have exactly the same duty as the trial judge and if the record is complete, we have exactly the same material and information in front of us as he did. *Hunter v. Farmers Insurance Group*, Wyo., 554 P.2d 1239, 1244 (1976). The moving party has the burden of showing the absence of a genuine issue of material fact. *Hunter v. Farmers Insurance Group*, supra, at 1343; and *Knudson v. Hilzer*, Wyo., 551 P.2d 680, 685 (1976). Appellant admits there is no genuine issue of material fact and, therefore, we proceed to determine only whether appellees were entitled to judgments as a matter of law.

## FAILURE TO COMPLY WITH MOTOR VEHICLE STATUTES

▆▆▆ Appellant first contends that appellees failed to comply with certain motor vehicle statutes, dealing with unclaimed and abandoned motor vehicles. We note that the only mention of this issue in the record is in the affidavit of appellant's collection manager, which was properly rejected by the district court as not being in compliance with Rule 56, W.R.C.P.[2] Appellant did not file a brief opposing summary judgment, but the initial complaint filed in this matter, which makes reference to an "unlawful sale," possibly includes appellant's contention.[3] We are forced to note

---

1. This is not a case like *Wydisco, Inc. v. McMahon*, Wyo., 520 P.2d 218 (1974), or *Nix v. Chambers*, Wyo., 524 P.2d 589, where there were no transcripts or statements of evidence. Here we have all of the evidentiary documents which were presented to the district court. We can generally determine from the evidence and other pleadings contained in the record, the issues sought to be raised by appellant.

2. Appellant's only affidavit was filed the day of the summary judgment hearing. Rule 56(c),

supra, provides that "the adverse party *prior to* the day of hearing may serve opposing affidavits." [Emphasis supplied]

3. It seems not amiss to mention "that the effect of a motion for summary judgment is to pierce the formal allegations and reach the merits of the controversy." *Clouser v. Spaniol Ford, Inc.*, Wyo., 522 P.2d 1360, 1363.

that parties should take care to preserve issues for appeal, or risk a decision not to consider a contention not clearly presented below. After review of §§ 31–335 to 31–337, W.S.1957 (dealing with unclaimed vehicles), and §§ 31–338 to 31–346.3, W.S.1957, 1975 Cum.Supp. (dealing with abandoned vehicles), we find that they have no application to a fact situation such as that presented by this appeal. Even if we were able to find these statutes applicable, appellant's contention largely relates to its original claim of conversion. The district court found that this claim was barred by the doctrine of laches, since appellant knew the location of the mobile home more than a year prior to the lien sale, but failed to do anything to protect its interest therein. Appellant does not contest the propriety of this finding; and, therefore, the finding is deemed conclusive. *Wyoming Department of Revenue v. Wilson,* Wyo., 409 P.2d 960 (1965).

### THE STORAGE LIEN ISSUE

Appellant's second point raises the question of whether or not Pauli had a valid storage lien pursuant to § 29–115, supra, and, more particularly, whether a storage lien may arise under the statute by an implied request to store. Appellant cites authority to the effect that lien statutes in derogation of the common law must be strictly construed. We readily accept that general proposition. See *Cities Service Oil Co. v. Pubco Petroleum Corp.,* Wyo., 497 P.2d 1368, 1371–1372 (1972) [oil and gas lien]; *Sargent v. Delgado Oil Co.,* Wyo., 492 P.2d 193, 194 (1972) [mechanic's lien]; and *Arch Sellery, Inc. v. Simpson,* Wyo., 346

P.2d 1068, 1071 [subcontractor's lien]. We also accept appellant's contention that there was no common-law lien for storage and, therefore, such a lien can only be acquired by statute. *Lewis v. Gray,* 109 Me. 128, 82 A. 1, 2 (1912); *North End Auto Park v. Petringa Trucking Co.,* 337 Mass. 618, 150 N.E.2d 735, 737 (1950); *Grice v. Berkner,* 148 Minn. 64, 180 N.W. 923, 924 (1921); *O'Brien v. Buxton,* 9 N.J.Misc. 876, 156 A. 17, 18 (1931); *Williams v. International Harvester Co.,* 172 Or. 270, 141 P.2d 837, 845 (1943); and *West Allis Industrial Loan Co. v. Stark,* 197 Wis. 363, 222 N.W. 310 (1928). Therefore, if Pauli had a valid storage lien it must be based on the language of § 29–115, supra, which provides:

"§ 29–115. Creation of lien for costs of labor, services, materials and feed; exception.—(a) Any person, firm or corporation who makes, alters, repairs, bestows labor upon, transports, stores or keeps any goods or chattels, or who feeds, herds, pastures or cares for any domestic or wild animal, *at the request of the owner or any person in possession thereof,* as [has] a lien on such goods, chattels or animal for his or its reasonable charges for the labor, services, materials and feed performed or provided.

"(b) However, this act [§§ 29–115 to 29–120] shall not apply where a lien is provided for in section 7–209, chapter 219, Session Laws of Wyoming 1961, (Uniform Commercial Code [§ 34–7–209]). (Laws 1967, ch. 89, § 1.)" [Emphasis supplied][4]

Appellant asserts that for a lien to arise under this section, there must be an *actual* verbal or written request for storage by the

4. The legislative history of §§ 29–115 to 29–120, W.S.1957, C.1967, seems to reveal its scope and applicability herein. Prior to 1961, Wyoming had separate personal property, agistor's, warehousemen's, mechanic's, and motor vehicle liens. Only the warehousemen's (§ 55–112, W.S.1945) and motor vehicle lien (§ 55–501, W.S.1945, 1957 Cum.Supp.) statutes made reference to liens for storage. In 1961, these provisions were repealed and, as amended, reenacted as part of the Uniform Commercial Code. See Session Laws 1961, ch. 219, §§ 9–601 to 9–604. No reference to storage was contained in these provisions. In 1967, these provisions were repealed (Session Laws 1967, ch. 84, § 35), and replaced by the present §§ 29–115, et seq. (Session Laws 1967, ch. 89). In the most recent version, storage language reappeared. It would seem that the present provisions were intended to cover all the previous statutory liens, including storage situations not directly covered by the present warehousemen's lien (§ 34–7–209, W.S.1957, 1975 Cum. Supp.), which requires the existence of a warehouse receipt or proceeds thereof. Although not controlling, this analysis buttresses our decision herein.

owner or person in possession of the goods which were stored. In so asserting, appellant relies on the general rule of strict construction set forth herein. We cannot agree that this rule of strict construction dictates the result urged by appellant. This court, in *Arch Sellery, Inc. v. Simpson,* supra, when construing a subcontractor's lien statute, also in derogation of the common law,[5] made reference to Chief Justice Potter's decision in *Big Horn Lumber Co. v. Davis,* 14 Wyo. 455, 84 P. 900, reh. den. 14 Wyo. 455, 85 P. 1048, 7 Ann.Cas. 940. We cited therein the case of *Bruce v. Berg,* 8 Mo.App. 204, for the proposition that

> "to authorize a lien there need not be an express contract, but that an implied contract is sufficient."

While we were not construing the same statute in *Big Horn Lumber,* we, nevertheless, believe the holding points the way to the proper rule to be applied in construing lien statutes.

In *Grice v. Berkner,* supra, the Minnesota Supreme Court was faced with a factual situation similar to that presented here. The owner of a moving picture outfit, who was leasing space in a building owned by the defendant, abandoned the outfit and disappeared. The defendant, being unable to locate the outfit's owner, removed it from the building and stored it in another building. Plaintiff, holder of a chattel mortgage on the outfit, upon default, demanded possession of the machine. Defendant refused to surrender it until his storage claim was paid. The court held that a person who stored goods for another and was neither a warehouseman nor in the storage business, had no common-law lien for storage charges. He did, however, have a valid lien under a statute which provided that

> " '. . . Whoever *at the request of the owner or legal possessor* of any personal property' shall keep or store such property 'as a warehouseman or other

bailee,' shall have a lien thereon for the value of such storage and the right to retain the property until such lien is discharged. . . ." [Emphasis supplied]

Plaintiff argued in *Grice,* supra, that there had been no *express* request to store, but the court held defendant was an "involuntary depositary" which effected an implied request to store within the intendment of the statute. Other courts have held that a storage lien may be based on an implied request to store. See *Younger v. Plunkett,* E.D.Pa., 395 F.Supp. 702, 709 (1975); *Jackson v. Cantrell,* 36 Ala.App. 587, 61 So.2d 459, 461 (1952); *Hill & Sanders, Inc. v. Keneipp* (D.C.Mun.App.1954) 109 A.2d 141, 143, 48 A.L.R.2d 889; *Wilkinson v. Townsend,* 96 Ga.App. 179, 99 S.E.2d 539, 541 (1957); and *O'Brien v. Buxton,* supra, 156 A. at 18. cf., *Lewis v. Gray,* supra.

 We hold, therefore, that under § 29–115, supra, an implied request to store may give rise to a valid storage lien, and that such an implied request arises when the owner of goods abandons such goods on the property of another. Appellee Pauli was entitled to a storage lien as a matter of law.

## LIEN FORECLOSURE

 Appellant's third contention argues that even if Pauli had a valid storage lien, he failed to properly foreclose it pursuant to the statutes. More specifically, appellant argues that Pauli failed to timely commence foreclosure proceedings under § 29–118, W.S.1957, C.1967, which provides:

> "§ 29–118. Termination of lien.—(a) A lien under this act [§§ 29–115 to 29–120] shall terminate:
>
> "(i) Upon a lienor's voluntary surrender of possession of the property, unless a lien statement has previously been filed as provided in section 3 [§ 29–117];
>
> "(ii) *six months after the date upon which the charges* for labor, services, ma-

5. Section 29–4, W.S.1957, C.1967, provides:
> "Every mechanic or other person, who shall do or perform any work or labor upon . . . any building . . . *by virtue of*

*any contract with the owner or proprietor thereof,* . . . shall have for his work . . . a lien upon such building . . . ." [Emphasis supplied]

terials and feed giving rise to the lien *become due and payable,* unless a lien statement has previously been filed as provided in section 3 [§ 29–117] *or unless action to enforce and foreclose the lien has been commenced;* and

"(iii) six months after a lien statement has been filed as provided in section 3 [§ 29–117], unless action to enforce and foreclose the lien has been commenced.

"(b) Upon termination of a lien, the lienor shall have no further right to possession of the property and no further interest therein. (Laws 1967, ch. 89, § 4.)" [Emphasis supplied]

Appellant asserts that Pauli's storage charges should have been limited to no more than ninety days from the date of abandonment, May 10, 1974. According to appellant's calculations, Pauli had to commence foreclosure by February 10, 1975. Pauli attempted to notify the mobile home owners by registered mail on March 24, 1975, pursuant to the notice provisions of § 29–119(b), W.S.1957, C.1967.[6]

The statute fails to define when storage charges "become due and payable," and we will not read into the statute an arbitrary time limit. That is a legislative responsibility. Storage, unlike the performance of specific services, is a continuing service. See *Snyder Automotive, Inc. v. Boyle,* 162 Minn. 261, 202 N.W. 481, 482 (1925). In other words, the service does not terminate merely because charges for it have accrued.

There is, therefore, no clear violation of § 29–118, supra, which would cause Pauli to lose his lien. Furthermore, a reading of the record indicates that Pauli's actions herein were reasonable. He diligently attempted to find the mobile home owner and to determine whether there was an encumbrance on it. As indicated by the district court, it was, in fact, appellant's failure to protect its security interest in the mobile home which resulted in the instant problems. We, therefore, hold that the storage lien herein was properly foreclosed.

 Having found that Pauli was entitled to a judgment as a matter of law, it necessarily follows that Coulter, as the lien-sale-purchaser, was also entitled to a judgment as a matter of law. See § 29–119(e), W.S.1957, C.1967, which provides that a purchaser in good faith takes free of any rights of persons against whom the lien was valid, *even if* there was noncompliance with the statute.

Appellees' motion to dismiss the appeal is denied; but the summary judgments entered herein are affirmed.

Affirmed.

---

**6.** Section 29-119(b), supra, provides in pertinent part:

"(b) *Sale generally; Notice.*—A lien arising under this act [§§ 29–115 to 29–120] may be enforced by public or private sale of the property, in bloc [block] or in parcels, at any time or place and on any terms which are commercially reasonable, after mailing to their last known address, by first class mail a notice to all persons known to claim an interest in the property. Such notification must include a statement of the amount due, the nature of the proposed sale and the time and place of any public sale. . . ."