BERTSCHY MOTOR COMPANY, Appellee, v. T. W. BRADY, Appellant.

**WORK AND LABOR:** Damages—Delay. Evidence reviewed and held to show unreasonable delay in repair of an automobile, the plaintiff having employed 350 hours and prolonged the work from March 19th to September 19th following.

*Appeal from Pottawattamie District Court.*—HON. A. B. THORNELL, Judge.

WEDNESDAY, OCTOBER 21, 1914.

REHEARING DENIED TUESDAY, JANUARY 26, 1915.

ACTION on account for services rendered in repairing an automobile—*Modified* and *Affirmed.*

*T. E. Brady,* for appellant.

*W. S. Stillman,* for appellee.

GAYNOR, J.—The plaintiff claims that on or about the 19th day of March, 1911, the defendant delivered to it a certain automobile, and directed the removal of the radiator and cylinder and the water pump for inspection; that the plaintiff performed this work, which was reasonably worth $11.90.

1. WORK AND LABOR: damages: delay.

That on April 6, 1911, defendant ordered the plaintiff to bore cylinders, furnish new pistons, valves and cogs to be ground, and bearing on crank shaft trued up; that it was agreed with defendant that he pay the plaintiff for such work, the sum of $100.00; that the plaintiff did work that is fairly worth the sum of $100.00.

That on the 29th day of May, 1911, defendant directed plaintiff to change transmission in shifting gears from pro-

Vol. 168 IA.—39

gressive to selective style, weld on a boss where case was cracked, and provide larger hole for the shaft; to remove the same, make one yoke to fit shaft, separate the two shifting gears, and replace other gears, at the agreed price of $75.00, which was its fair value; that plaintiff did the work.

That on May 31, 1911, defendant ordered plaintiff to remove the transmission case, and make certain necessary repairs to same, and reassemble and apply to car, at an agreed price of $25.00, and that plaintiff did the work, and it was fairly worth that sum.

That on August 5, 1911, the defendant ordered the plaintiff to remove the drive shaft housing and drive shaft, and weld on the shaft where cut, and reassemble the same, and furnish one drive shaft housing. Plaintiff did the work and it was reasonably worth $36.35.

That these sums are due plaintiff with interest.

Plaintiff further claims that the defendant left said automobile stored with the plaintiff from November 1, 1911, to October 9, 1912, and that the storage was reasonably worth the sum of $5.00 a month.

Plaintiff further asks a lien upon said automobile for the sum so due.

Defendant denies plaintiff's claim, and, by way of counterclaim, says that he left said automobile with the plaintiff with instructions to repair and put it in good condition; that plaintiff represented that certain repairs were necessary to put said car in good condition; that the price would be a reasonable amount, and alleges that much of the repairs were unnecessary, and defendant was misled by the plaintiff's representations.

That the plaintiff agreed to make the said repairs reasonably, promptly and without delay; that all of said repairs could and should have been made within one month; that that would have been a reasonable time within which to make repairs; that the defendant repeatedly demanded of the plaintiff that said repairs be completed, and that said automobile

be delivered to him; that the plaintiff negligently and carelessly failed, neglected and refused to complete said repairs for six months, which was an unreasonable time, and by reason thereof, defendant was deprived of the use of the car to his damage; that the reasonable and fair value of the use of the car during the time it was in the possession of the plaintiff was $300.00 a month.

Defendant further says that the plaintiff did not use ordinary care in the storage of said car, and he is damaged, by reason thereof, in the sum of $500.00.

This case was tried in equity and judgment and decree entered for the plaintiff in the sum of $223.25, with six per cent interest from the first day of November, 1911.

This case is triable *de novo* here. It involves simply a question of fact.

The general manager of the plaintiff company, A. J. P. Bertschy, testifies substantially as follows:

"About March 19, 1911, Mr. Brady brought his automobile to the shop; asked what was necessary to put the car in running order. I told him that it would be necessary to take the engine apart for examination to determine what was needed, and it was agreed that we should take the engine apart and let him know what was needed to put the car in running order, at which time the expense would be estimated. There was no agreement about the expense for taking the engine apart. Some time later, in the fore part of April, Mr. Brady was over and we looked over the disassembled parts of the engine and I gave him my opinion as to what was necessary to be done to the engine and that the price of said work was not to exceed $100.00. He ordered the work done and we went ahead and did it. This work was completed about May 10th. I then advised Mr. Brady that the transmission case required some repairs and, after consultation with him, it was agreed that we should remove the transmission case and make the necessary repairs, and replace it upon

the car for $25.00. About May 29th I notified him that the transmission required some repairs which could be done at less expense while the case was being repaired. It was then agreed that we change the transmission from progressive to selective type, recut the gears and do the necessary work incident to changing type of transmission. The agreed price was $75.00. This work was completed about July 24, 1911. I notified him by letter, July 24th, that the work was completed, and had found that the drive-shaft housing was broke at the differential where it joins the rear axle housing. He came over and we took the drive-shaft housing out of the car, and, after some discussion, Mr. Brady ordered me to order a new drive-shaft housing, repair the damage to the drive shaft, put same back on the car, which I did, and the total charge for the work, in connection with the housing, was $36.35, of which $17.75 was for the part itself, repair work $14.50, fitting new part $3.85, welding $.25. The work was finally completed September 19, 1911. He called in my absence and again called and said he would be in again soon and wanted to see the car tried and arrange to settle for it. I wrote him on October 19th, notifying him that I intended to start charging storage on the car at $10.00 per month. I wrote on November 2nd, notifying him of balance on our books, $245.85, and stated unless settled at once, we would enforce same by writ of attachment. Received an answer from him complaining of the delay of six months on repairs, depriving him of the use of the car during the entire summer, asking that the matter be left open for a while, expressing the hope of an amicable settlement at a later day.

"He was very anxious to have his car during the summer, and the repair work was more than we anticipated and it took a longer time than we anticipated. The items of work were done on separate orders which probably took four or five weeks longer than a general order to put the car in repair. When each of the orders were given, I prepared a memorandum of the order or agreement which was either delivered to

Mr. Brady or mailed to him, and when each item of work was completed, I mailed him an invoice of the order.

"I verbally agreed with Mr. Brady that I would waive the charge of $25.00 for the work on transmission case, and include that in the $75.00 contract which would include repair of shifting device and repair of broken case. Mr. Brady was anxious to get the car during the summer, but the car was not completed."

It appeared further in the plaintiff's testimony that the memorandum referred to by the witness, Bertschy, and the invoice as referred to of the work done, were received by Mr. Brady some time subsequent to the date they bear.

There was also testimony that the charges made were the reasonable charges for the work done.

The defendant testified in his own behalf substantially as follows:

"Mr. Bertschy examined the car at my request, but said he could not determine what it needed or what it would cost to repair it without taking it apart. He suggested that he would take down the engine, remove the radiator, take the pump to pieces and the steering gears, so I could examine them; that he would complete this in two or three days and call me over there to see the car and tell me what it would cost. That there would be no expense for work on the car until he told me what the price would be, and I ordered the work done. I called his attention, particularly, to the work necessary on the lamps, to the flexible tube, leading from the bulb to the horn and the steering gear. He said he could fix the car just as good as it was when it came from the shop brand new, which would be a better one than those being manufactured at present. He asked how soon I wanted the car and I said as soon as I can get it. He said I could count on having it in two or three weeks and that it probably would cost not less than $50.00 and not more than $90.00 to put it in first class condition. In a few days I made inquiry if the

car was ready for examination, but it was not. Later I came over in response to call, and Bertschy showed me what he said was necessary to be done. He said it was necessary to rebore the cylinders, put new rings in the pistons, repair the pump, that the car was unsafe because of the steering gear. He said he would fix the engine, radiator, pump, lamps, horn, steering gear, and everything back to the transmission in perfect working order just as good as when the car was new, for $100.00, and I ordered him to go ahead and do it. I inquired how long it would take. He said he would fix it as soon as possible, probably not more than a week or ten days until I could have my car. I called repeatedly, both in person and by telephone for the car, but it was not finished.

"He later told me there was a crack in the transmission case which made it unsafe to drive. He agreed to take the case out and do the necessary welding, put it back in the machine for $25.00, to be done in two or three days. He finally told me that he had the transmission out and found some cogs were cut. He had it all to pieces. He showed me some wheels upon which the ends of the cogs were battered, and some of the cogs were mashed. He said that I had better have the device changed. Finally he said, as I have the transmission out, if you want the transmission changed, I will do the whole job, including the welding necessary upon the case, put it back, for $75.00. I repeatedly called upon him and urged him to hurry up and complete the work. About the 1st of August, I got a further notice from him that the sleeve of the main drive shaft was broken and should be fixed. He took the drive shaft out of the car and took the casting off. Somewhere about the middle of October, I received notice that the car was completed."

This was practically all the testimony bearing upon the plaintiff's claim upon which the court allowed the full amount of plaintiff's claim, less the $25.00 which the plaintiff admitted should have been included in the $75.00 for changing the

transmission case and repairing the shifting device and the broken case.

Under a fair consideration of all the evidence offered, we are satisfied that the plaintiff was entitled to the amount allowed by the court, unless the defendant is entitled to something as against that amount, for the failure of the plaintiff to perform the work within a reasonable time.

The plaintiff's evidence tends to show that the defendant was anxious to have the car during the summer; that the repair work was more than they anticipated, and took longer than they anticipated; that the items of work were done on separate orders; that this took four or five weeks longer than a general order to put the car in repair.

It will be noticed that the first talk between the plaintiff and defendant had reference to the disassembling of the engine for inspection; that the next talk had reference to putting the engine in repair and making it as good as new; that the next talk had reference to the transmission and the transmission case and changing the transmission. The last item relates to a new drive shaft housing, and repair of the drive shaft, and putting the same back in the car. The second and third items were agreed upon. The first and last, the cost was not agreed upon, and the record shows that the charges are reasonable.

We come now to determine whether or not the defendant is entitled to anything on account of unreasonable delays, on the part of the plaintiff, in performing the work.

It appears that defendant was anxious at all times to have the work completed as early as possible; that he responded promptly to requests of the plaintiff touching any matter that needed his attention, and gave prompt directions to plaintiff as to the work which the plaintiff did do. It appears that the automobile was delivered to the plaintiff on the 19th day of March, 1911; that the plaintiff began disassembling the same on the 21st and concluded the work of disassembling on the

4th day of April, consuming two weeks in the work of disassembling the engine.

It appears that during that time, they were actually engaged in this work about fifteen hours. They were thus two weeks in doing work that required but fifteen hours to complete; that they began the repairs on the engine on the 6th day of April and finished on the 9th day of May; that, during that time, they worked on the engine about 140 hours.

On the next item, removing transmission, making necessary repairs to the transmission case and reassembling, it appears that plaintiff began work on the 31st day of May and concluded the work on the 30th day of June; that during that time, they worked on the car about thirty hours.

The next item, involving the removal of the drive-shaft housing and drive shaft and welding on shaft where cut, and reassembling same, plaintiff began on the 5th day of August and completed on the 19th day of September. During that time, the plaintiff worked on the machine only about twenty-two hours.

In repairing gears and changing transmission, shifting gears to selective type, welding on boss where case was cracked, etc., plaintiff began on the 23d day of June and completed the work July 14th, during which time the plaintiff actually worked on this machine about 143 hours; making the total number of hours expended in labor upon this machine from the 19th day of March, 1911, to the 19th day of September, 1911, of 350 hours.

We are satisfied, from this record, that the plaintiff is chargeable with unreasonable delay in completing the work upon this machine. Making all reasonable allowance for interruption and necessary delays incident to that kind of work, we are inclined to the opinion that due diligence would have enabled the plaintiff to have completed the work in at least one hundred days, and all over that was unreasonable delay on the part of the plaintiff, and that the defendant has been damaged to some extent by this delay. The difficulty, how-

ever, is in determining the amount that should be allowed him on account thereof. Much of the evidence on this point is incompetent, and some of it, though competent, is not wholly satisfactory as a basis for estimating, but we are of the opinion that something should be allowed the defendant on this claim, and, after a careful analysis of all the testimony, we have reached the conclusion that he is entitled to at least $125.00 on account of such unreasonable delay, and that this sum should be allowed him, as against the sum awarded by the court.

Therefore, it is found and determined that plaintiff should have and recover of the defendant, the sum of $98.25, with six per cent interest from the first day of November, 1911, and it is hereby ordered that judgment be modified to this extent, and that judgment be entered in the court below in favor of the plaintiff for $98.25, with interest as aforesaid; that two-thirds of the costs made in this cause in both courts be taxed to plaintiff and one-third to defendant.—*Modified* and *Affirmed*.

LADD, C. J., DEEMER and WITHROW, JJ., concur.