Argued September 8; modified October 5, 1943

# WILLIAMS *v.* INTERNATIONAL HARVESTER COMPANY ET AL.

## (141 P. (2d) 837)

Before Bailey, Chief Justice, and Belt, Kelly, Lusk, Brand and Hay, Associate Justices.

*George H. Brewster,* of Redmond (Cunning & Brewster, of Redmond, on the brief) for appellant.

*Bartlett Cole,* of Portland, for respondent International Harvester Co.

*Ralph J. Brown,* of Prineville, for respondents Amundson & Baur.

LUSK, J. The plaintiff has appealed from a judgment of involuntary nonsuit.

The action grows out of the sale by the defendants Amundson & Baur, partners, of a new International Pickup truck to the plaintiff. Amundson & Baur are alleged to have been agents of the defendant International Harvester Company. The latter defendant will be hereinafter referred to as International.

We are met at the outset with the contention of the defendants that the amended complaint, upon which the case was tried, does not state facts sufficient to constitute a cause of action, and shall first consider that question.

In substance, the amended complaint alleges that the plaintiff on August 6, 1941, ordered a new International Pickup truck from Amundson & Baur, upon the following terms and conditions: $325.00 of the purchase price was to be paid by a credit equal to the value of a used automobile to be turned in by the plaintiff to the defendants, and the plaintiff was to give Amundson & Baur a note for $609.34, the balance of the purchase price, together with a conditional sales contract and a chattel mortgage upon the truck. The order called for insurance on the truck, and the stipulated purchase price included a charge for insurance against fire, theft and collision. At the time the order was given plaintiff informed defendants that she "preferred to carry her own insurance", but was advised by the defendants that until the truck was fully paid for the defendants would obtain the insurance for her. Subsequently, on August 11, 1941, the truck was delivered to the plaintiff who delivered her used automobile to the defendants and executed the note, conditional sales contract, and chattel mortgage in accordance with the

terms of the order. Later the plaintiff paid for the truck in full. She had at that time arranged to obtain insurance from a company of her own selection, but was informed by the defendants that until she signed "a release for the insurance" the truck was insured, and that they would present such release to her for her signature, but never did so. It is alleged that the representation that the truck was insured was knowingly false, that plaintiff relied on it, and that on September 13, 1941, the truck was "involved in an accident" and "practically demolished". It is further alleged that on October 1, 1941, at defendants' request and upon their assurance that her car had been insured and that she owed the premium for such insurance, she paid an insurance premium of $47.25 to the defendant International, although the defendants at that time knew that the truck was not insured and had been wrecked. It is next alleged that on October 1, 1941, the plaintiff delivered the truck to the defendants in consideration of their agreement "to deliver the car to Prineville for repairs", and said car was delivered to Terrell's Body & Paint Shop at Prineville, Oregon; that the repairs should have been made and the truck redelivered to plaintiff within thirty days; that the defendants failed, neglected, and refused to order said repairs and refused to pay plaintiff the value of said car; that the defendants stored the truck in a garage at Prineville; that "towage and storage accrued against it", and that on May 6, 1942, the truck was advertised for sale for storage charges; that the defendants failed to buy in the truck or to notify the plaintiffs that they would not do so; and the truck was sold on June 2, 1942, by the sheriff of Crook County, Oregon, and plaintiff "thereby deprived of all right, title, and interest in

and to said car." Paragraph XVI of the amended complaint reads:

"That by reason of defendants' wrongful conduct as aforesaid plaintiff was deprived of the use of said car between November 1st, 1941, to April 18th, 1942, to her damage in the sum of $5.00 per day, or a total of $845.00 and on June 2, 1942 was deprived of her ownership in said car to her further damage in the sum of $869.00 and the further sum of $47.85 insurance charges which the defendant caused plaintiff to pay on October 1st, 1941 by assuring her the car had been insured at the time of the accident on September 13th, 1941."

The prayer is for damages as alleged in the paragraph just quoted.

Before the trial the defendants orally submitted a motion to require the plaintiff to elect whether she would proceed on the theory of a liability against the defendants for (1) failure to procure insurance for the plaintiff's truck, (2) claim of liability against the defendants for failure to repair the truck, and (3) a claim of liability against the defendants for allowing the truck to be sold for the payment of storage charges. The court denied the motion and announced that the case would be submitted to the jury, if at all, upon the theory that the action was brought for failure to procure insurance for the truck and that the other matters mentioned in the complaint were, in the opinion of the court, evidentiary.

On the argument here counsel for the plaintiff stated that the action is not one for damages for breach of an oral agreement to insure the truck, but is one for its conversion. The amended complaint, the essential allegations of which we have attempted to summarize, mixes up in one cause of action different alleged wrongful acts in such a manner as to tend to conceal,

rather than make plain, the theory upon which the pleader intended to proceed. There are allegations appropriate in an action of fraud; a breach of an agreement to procure insurance is certainly alleged; but apt words to charge converson are nowhere to be found.

The difficulty is partly resolved by reference to the allegations of damage in Paragraph XVI. They show conclusively that a cause of action for breach of an oral agreement to insure has not been stated. The measure of recovery in such an action against an insurance agent (and we take it that no different rule would apply here) would be the same as in an action upon the policy had one been issued—in this case the extent of the damage to the automobile. *Hardwick v. State Insurance Company,* 20 Or. 547, 553, 26 P. 840; *British Insurance Company v. Lambert,* 26 Or. 199, 202, 37 P. 909; *Humphry v. Hartford Fire Insurance Company,* 15 Blatchf. 35, Fed. Cas. No. 6974; 32 C. J., Insurance 1089, § 172. See cases in annotation, 18 A. L. R. 1219. Not only is the extent of the damage to the truck not alleged ("practically demolished" is wholly insufficient), but, with the exception of the claim for the insurance premium paid by plaintiff, Paragraph XVI attributes the damages not to breach of an agreement to insure, but to the wrongful acts of the defendants after the truck was delivered to them to be repaired. The demand for return of the insurance premium is itself a repudiation of the theory of a cause of action based on an agreement to insure, because if the plaintiff was entitled to the insurance, or its equivalent by way of damages, she would be required to pay the cost of a policy. 32 C. J., Insurance 1090, § 172.

But damages for loss of the use of the truck after November 1, 1941, and for being deprived of its ownership, are not referable to a breach of an agreement to

insure. They are the consequences of the alleged wrongful acts of the defendants after the truck was delivered to them to be repaired. So far, we are in agreement with counsel for the plaintiff, who says in his brief that "the amended complaint does not allege or demand damages for failure to insure."

■■ The complaint, in our opinion, contains two causes of action, which are not, but which should have been, separately stated.

One cause of action is for damages in the amount of the insurance premium which the plaintiff paid, being thereunto induced by the defendants' misrepresentation that a policy had been issued.

The other cause of action is for damages suffered by the plaintiff as the result of the wrongful acts alleged to have been committed by the defendants after the car was entrusted to them. Is this an action in trover for conversion or something else? As stated, no apt words of conversion are used, but that of course is not conclusive. It might still be conversion if facts constituting that type of wrong were alleged, even though not with technical precision.

■■ Now a conversion is "any distinct act of dominion wrongfully exerted over one's property in denial of his right, or inconsistent with it", and "in order to maintain an action for conversion, there must have been, on the part of the defendant, some unlawful assumption of dominion over the personal property involved, in defiance or exclusion of the plaintiffs' rights, or else a withholding of the possession from the plaintiffs, under a claim of right or title inconsistent with that of the plaintiffs", *Lee Tung v. Burkhart,* 59 Or. 194, 201, 202, 116 P. 1066. Nonfeasance or neglect of a legal duty, or mere failure to perform an act made

obligatory by contract or by which property is lost to the owner, is not sufficient to support an action of trover. 26 R. C. L., Trover 1115, § 25; 65 C. J., Trover and Conversion 13, § 4; Restatement, Torts §§ 223, 224. See Notes, 15 Am. Dec. 152, 24 Am. St. Rep. 789.

■ ■ Measured by these established rules, the amended complaint does not state a cause of action in trover for conversion. The defendants came lawfully into possession of plaintiff's truck. They were bailees who had assumed the duty of having it repaired and then returning it to its owner. It is not alleged that the plaintiff ever demanded return of the property or that the defendants refused to comply with such demand. *Jeffries v. Pankow,* 112 Or. 439, 446, 223 P. 745, 229 P. 903. Nor is any other fact stated showing any distinct act of dominion wrongfully exerted over the plaintiff's property in denial of her right or inconsistent with it. All that is alleged is that defendants negligently failed to have the truck repaired and allowed it to be sold for storage charges. This would be a violation of the defendants' duties as bailees, for which, if established, they would be liable in damages. It would not constitute conversion, but would be the basis of an action on the case in accordance with the doctrine thus stated in 6 C. J., Bailments 1152, § 120:

> "The bailor may sue in case where the subject matter of the bailment has been misused by the bailee, or where a loss or injury to the property has occurred from the latter's neglect. In fact case may be brought for any breach by the bailee of duties implied by law from the existence of the relation of bailor and bailee, and if the duty alleged to have been violated is one that arises out of the relation it is no objection to an action in case that the performance of the duty has been expressly stipulated for."

We hold, therefore, that the amended complaint is sufficient, though we are not in accord with the construction placed upon it by the trial judge; and we will now consider whether the court erred in rendering a judgment of involuntary nonsuit, taking up first the claim for a return of the insurance premium paid by the plaintiff.

■ There is evidence of the following facts: Under date of August 7, 1941, the plaintiff gave a written order to the defendants Amundson & Baur for the purchase of an International Pickup truck for a total price of $862.25. By the terms of the order $325.00 was to be paid down (by trading in a used car valued at that sum), and the plaintiff agreed to give an installment conditional sales note for the balance, secured by a chattel mortgage on the truck. Mrs. Williams expressed a desire to carry collision insurance on the truck in a company of her own choice, and was informed that she was at liberty to do so.

The truck was delivered to the plaintiff and the transaction closed on August 11th, but in the meantime Amundson & Baur had been informed by International (from which Amundson & Baur purchased the truck) that they would not accept the installment note and chattel mortgage unless the collision insurance was written by a company designated by it. Amundson & Baur so advised the plaintiff, and a new order was executed by her and accepted by Amundson & Baur which included a charge of $47.25 for "$50.00 deductible accidental collision insurance and upset", and the installment note signed by the plaintiff and made payable to Amundson & Baur was for an amount which included this charge. The note and the chattel mortgage were thereupon endorsed and assigned by Amundson & Baur to International.

Two days later Mrs. Williams, having obtained sufficient cash, paid Amundson & Baur the balance owing on the note less the insurance charge, and was at that time, according to her testimony, informed by Mr. Arnett, a salesman for Amundson & Baur who had negotiated the sale, that the truck was insured "until I signed the release". About August 23rd or 25th she testified that she saw Baur, who asked her to sign the release, but was unable to find it and said that he would send Arnett to her ranch with the release, but never did so.

The so-called release, as appears from the testimony of Amundson, who was called as a witness for the plaintiff, was in form a letter prepared by International for Mrs. Williams to sign. It is addressed to Amundson & Baur and reads: "This is to certify that I request you do not place the insurance coverage as mentioned in the order for K-1 truck signed by me on August 7". This form of letter was sent to Amundson & Baur from the Portland office of International, accompanied by a letter to Amundson & Baur which stated that they were returning the note given by Mrs. Williams because it had been paid, and reads in part:

"The order you took called for fire, theft and $50.00 deductible collision insurance, and we ask that you obtain a letter from Mrs. Williams agreeing that it is satisfactory that this insurance not be placed."

The writing was never signed by the plaintiff, nor did she ever give any direction of like import to Amundson & Baur in writing or orally, and it is her testimony that Arnett told her there would be insurance on the truck "until they got the release".

On September 13th the truck was damaged in an accident of some sort. On the next day the plaintiff told Arnett that the truck had been wrecked, and he asked her if she had signed the release. She answered that she had not; and he thereupon told her that the car was insured. In fact no policy of collision insurance had at that time been issued.

On September 15th Arnett, apparently on behalf of Amundson & Baur, wrote the following letter to the Portland office of International:

"In regard to the enclosed form which you sent to have Mrs. Mary Williams sign, we contacted Mrs. Williams and she said that she did not wish to have the insurance canceled on the pickup.

Please place the fire, theft, and $50.00 deductible collision insurance on the pickup and send the amount of the bill together with the firm to whom the check is to be made payable to Mrs. Mary B. Williams at Madras, Oregon."

In reference to this letter Mrs. Williams answered in the negative the following question asked by her counsel:

"It appears, Mrs. Williams, that somebody wrote in on the 15th of September, Monday, the 15th of September, 1941, and informed the International Harvester company that you wanted insurance and that they were writing at your request; did you make any such request?"

In compliance with Arnett's letter of September 15th International procured Peter E. Esbenshade, an insurance agent at Portland, to issue the policy, and the latter, under date of September 17, 1941, wrote to Mrs. Williams enclosing a $50.00 deductible collision insurance policy on the truck together with his bill for

the premium in the sum of $47.85. The letter called her attention, among other things, to the fact that the policy was "for the ensuing year beginning September 15" and the policy bears on its face the following statement: "Period: From September 15, 1941 to September 15, 1942."

According to the plaintiff's testimony, Arnett came to her home on October 1st and asked her to pay the insurance premium. She asked him why she should pay the premium after the truck was wrecked, and he said the truck was insured and the premium must be paid and she should send the money to International. She accordingly made out a check in the sum of $47.25 dated October 1, 1941, payable to International and mailed it to that company at Portland. The company turned the proceeds of the check over to Esbenshade.

The plaintiff was cross-examined at length regarding the letter from Esbenshade and the bill for the premium which came with the letter and the policy, and, while admitting that she read the letter, it is the substance of her testimony that she paid little attention to it or to the policy, and that she was paying International for some other insurance previously effected by it. However unreasonable her testimony may appear in some particulars, it is sufficient to show, with the other evidence, particularly Arnett's letter to International of September 15th, after the truck was damaged, asking International to have a policy issued, that Arnett, acting for Amundson & Baur, had fraudulently induced her to pay the premium.

Consequently we are of the opinion that there was a case for the jury on the question of the plaintiff's right to recover the amount of the insurance premium from the defendants Amundson & Baur. But, for rea-

sons to be stated later, we think no liability has been established against the defendant International.

We consider next whether the evidence is sufficient to take the case to the jury on the claim for damages for loss of use of the truck. The plaintiff testified in effect that on September 15th, two days after the truck was damaged, it then being stored in a garage at Madras, Arnett called her on the telephone, told her that the insurance company insisted on bringing the truck to Prineville for repairs and that if she would permit it to be moved to Prineville it would be repaired. There is evidence that Arnett arranged with Terrell, a garage keeper at Prineville, to bring the truck to that city, and that Alander, a man employed by Terrell, went to Madras and saw Mrs. Williams, who accompanied him to the garage at Madras and authorized the release of the truck, and Alander thereupon towed it to Terrell's garage at Prineville.

No repairs were ordered by Arnett or any of the defendants, nor were any made, and the truck remained at Terrell's garage until June 2, 1942, when it was attempted to be sold on foreclosure to satisfy storage charges which had accumulated.

As previously stated, plaintiff claims damages for loss of the use of the truck from November 1, 1941, by which time it is alleged that the repairs should have been completed, until April 18, 1942, the day on which, according to the amended complaint, defendants informed plaintiff they would not repair the truck.

Generally, it may be said that a person may recover for the loss of the use of an automobile of which he is wrongfully deprived. *Goff v. Elde,* 132 Or. 689, 693, 288 P. 212; 5 Am. Jur., Automobiles 907, § 750; 15 Am. Jur., Damages 540, § 132. See cases digested in annota-

tions, 78 A. L. R. 912, 922; 32 A. L. R. 707, 713. Whatever may be the rule as to pleasure vehicles, concerning which there is conflict in the authorities, it seems to be well settled that such damages are recoverable in the case of a commercial automobile; and, since the truck was purchased by the plaintiff for use in her farming operations, she would be entitled to recover for such loss of that use as proximately resulted from the alleged failure of the defendants to carry out their implied undertaking to repair the truck. Evidence of the value of this use was offered by the plaintiff and rejected by the court. Under our construction of the amended complaint the ruling was erroneous.

 It remains to determine for what period of time the loss of use of the truck is to be deemed the proximate result of the defendants' neglect or refusal to make the repairs agreed upon. In that class of cases where an automobile has been injured by the negligence of another, damages for loss of use of the car are limited to the period reasonably necessary for making the repairs. 6 Blashfield, Cyc. of Automobile Law 36, § 3417. If a garage keeper is employed to make the repairs on a car and retains it for an unreasonable length of time while repairs are being made, he may be held liable for damages to the owner for the delay. 7 Blashfield, *ibid.* 524, § 5002; *Bertschy Motor Co. v. Brady,* 168 Iowa, 609, 149 N. W. 42. In this case, however, the automobile was never repaired at all. The plaintiff says that thirty days was a reasonable time for making the repairs; she also says that she has been damaged by the loss of the use of the truck over a period of more than five months. During all this time, so far as the record discloses, the plaintiff manifested no interest in the truck, made no inquiries of the defendants or the garage keeper or any one

else as to what was being done about it, and acted on the advice of her then attorney, Mr. Marsh, not to purchase it at the foreclosure sale. In our opinion, the claim of damages for loss of use for this entire period cannot be sustained. It it were, circumstances could be conceived in which an owner might equally well recover for loss of use of an automobile for five years. We think the case is analagous to that of a contractor who neglects or refuses to comply with his contract to build a building. There, the owner is permitted to recover for loss of rents—which is equivalent to the value of the use of the building—for such reasonable time after the building should have been completed under the contract as will permit the owner to complete the building, provided he does so promptly and within a reasonable time. *Savage v. Glenn,* 10 Or. 440; *U. S. Fidelity & Guaranty Co. v. Parsons,* 147 Miss. 335, 112 So. 469, 53 A. L. R. 88; 15 Am. Jur., Damages 540, § 130; 9 C. J., Building and Construction Contracts 812, § 149. Under this rule the plaintiff may not recover damages for the loss of use of her truck for an indefinite period of time, but will be limited to the period within which she could have repaired the vehicle had she acted promptly and within a reasonable time. And if it be true, as plaintiff alleges, that thirty days is a reasonable time within which the defendants should have made the repairs, we should suppose a like period of time ought to suffice for the plaintiff. In any event, the question would be for the jury, under appropriate instructions embodying the rule of law above stated.

 We find no merit in the defendants' contention that there was no consideration for the agreement to repair the truck, for, if the plaintiff's evidence be accepted, she entrusted the truck to them in the belief,

induced by their representations, that they had caused the truck to be insured. In these circumstances, they should not be heard to say that the plaintiff is not entitled to be compensated for loss which she may have sustained as the result of their failure to make the promised repairs within a reasonable time.

In support of the charge that plaintiff lost title to the truck through defendants' breach of duty, there was offered in evidence a certified copy of a notice of lien upon the truck for unpaid storage charges, filed by James A. Terrell on May 6, 1942, in the office of the county clerk of Crook county, together with the written direction of the claimant to the sheriff of Crook county to foreclose the lien, and the sheriff's return of sale. The evidence was rejected, evidently because the court had construed the complaint to state a cause of action only for breach of an oral contract to insure. In the view that we have taken of the plaintiff's pleading, and, since the cause must be remanded for further proceedings, the effect of this evidence must be considered by us.

The return of the sheriff shows that the truck was bought in at the sheriff's sale on June 2, 1942, by George H. Brewster for $78.50. Mr. Brewster was at that time attorney for Mrs. Williams, and as such had filed and verified the original complaint in this case on May 18, 1942.

It is urged by the defendants that Mr. Brewster could not thus acquire title to the truck in his own right, under the principle that an attorney employed to sustain his client's right or title to property cannot purchase for himself any outstanding or opposing title against the interests of his client either before or after the cause is ended. 5 Am. Jur., Attorneys at Law 294,

§ 59. Therefore, it is said, Mr. Brewster holds title to the truck as trustee for the plaintiff. The situation is novel, to say the least of it. As stated, Mr. Brewster bought in the truck for $78.50. Later he had it repaired at a cost of $368.29, making a total cost to him of $446.79. The plaintiff alleges in her complaint that she was damaged in the sum of $869.00—presumably the value of the truck after it was repaired—through the defendants' acts which deprived her of the ownership of the truck. If this be true, her attorney has made a profit at his client's expense in the amount of $422.21, which his client seeks to recover in this action from the defendants, along with the additional sum of $446.79.

We are fortunately spared the duty of determining whether, if this were a controversy between the plaintiff and her attorney, the latter should be held to have made the purchase as her trustee, or whether the defendants can take up the cudgels on her behalf and present her rights as against her attorney as a defense to the present action, because, for a reason now to be stated, we are of the opinion that Mr. Brewster never acquired, and his client never lost, either the legal or equitable title to the truck.

■ Terrell, the lien claimant, was in possession of the truck from the time that it was delivered to him by the defendants Amundson & Baur until it was sold on foreclosure. The notice of lien is in the form prescribed by § 67-602, O. C. L. A., and the attempted foreclosure was by sale in the manner authorized by § 67-606. That these provisions have no application in the case of a lien on chattels remaining in possession of the lien claimant is settled by the decision in *Tulloch v. Cockrum,* 115 Or. 601, 236 P. 1045, where it was held that in the case of a possessory lien on chattels a foreclosure

sale attempted pursuant to § 67-606 was void. The lien here involved is authorized by § 67-502, which provides in part that "any person who shall safely keep or store any grain, wares, merchandise and personal property at the request of the owner or lawful possessor thereof * * * shall have a lien upon such property for his just and reasonable charges for the labor, care and attention he has bestowed * * * and he may retain possession of such property until such charges be paid". Section 67-503 provides that a notice of intention to claim such a lien shall be filed within a designated time with the county recorder or county clerk of the county in which the personal property upon or against which such lien is claimed is located, and that "no right of lien hereunder shall cover a period exceeding five months, in all, from the date the claim upon which such lien is based first began to accrue." The section also prescribes the methods of foreclosure and that where foreclosure is by advertisement and sale, instead of by suit, the sale shall be advertised "once a week for two successive weeks in a daily or weekly newspaper" published in the county where the property is to be sold.

██ ██ The Terrell lien is for storage for a period of more than seven months, that is, from October 1, 1941, to May 5, 1942, and the sale was advertised by posting notices of the time and place thereof in three public places in the county for a period of ten days as prescribed in § 67-606 relating to liens which do not depend on possession.

It appears, therefore, that the notice required in cases of possessory liens was not given, and that the period covered by the lien exceeds the limitation as to time contained in § 67-503. Under *Tulloch v. Cockrum,* supra, the sale was void and ineffectual to pass title to

the truck. At common law a garage keeper has no lien for storage (38 C. J., Livery Stable and Garage Keepers 79, § 22; 24 Am. Jur., Garages, Parking Stations, and Liveries 507, § 55); the lien is a creature of the statute which not only does not authorize, but expressly excludes, a lien such as this for storage for a period of more than five months.

It follows that the only damages to which the plaintiff is entitled, under her own evidence, on this branch of the case, are for loss of the use of the truck proximately resulting from the alleged breach of duty of the defendants Amundson & Baur.

██ ██ We have found it convenient to reserve for final discussion the question of liability of the defendant International. The amended complaint alleges that the defendants Amundson & Baur were agents of International, but no agency was established by the proof. It may be gathered from the record that International is a manufacturer of automobile trucks and that Amundson & Baur are dealers who purchase such trucks and sell them at retail. The order which plaintiff gave for the truck here in question was directed to Amundson & Baur, and, so far as anything in the evidence discloses, they made the sale to Mrs. Williams on their own behalf and not as agents for International. Amundson & Baur bought the truck from the latter defendant, assigned to it Mrs. Williams' note and chattel mortgage to secure payment, and, when Mrs. Williams paid them, they in turn paid International. The relationship was that of seller and buyer, not that of principal and agent.

As to the question of insurance on the truck, there is nothing to show that Amundson & Baur were authorized to act as agents of International or to make any

representations on its behalf. The latter merely refused to accept the security of the chattel mortgage unless it retained the privilege of placing the insurance itself. When, later on, Mrs. Williams paid the balance due on the truck, International asked Amundson & Baur to secure Mrs. Williams' signature to the so-called release, evidently for the purpose of preventing the assertion of the very sort of claim which is made in this action. Certainly there is nothing in the evidence from which it could be found that Amundson & Baur had been authorized by International, either to agree to have the truck insured or to represent that it had been insured. Nor does the subsequent conduct of International in causing the policy of insurance upon the truck to be issued tend in any way to show the relationship of principal and agent. This action was taken in ignorance of the fact that the truck had at that time been damaged, and at the request of Arnett, the salesman for Amundson & Baur, who appears to have been informed of that fact. When the check for the premium was sent to it instead of to the insurance agent who wrote the policy, International promptly turned over the proceeds of the check to the agent. At that time International had no interest in the Williams truck. It had been paid in full and had returned the Williams note and chattel mortgage, and on its part the transaction amounted to nothing more than an accommodation to Mrs. Williams and to Amundson & Baur. No evidence has been pointed to which in the remotest degree shows any authority in Amundson & Baur or their salesman Arnett to act for International in making the agreement testified to by Mrs. Williams for the repair of the truck.

The burden of proving agency was on the plaintiff, and, as there is no evidence in the record connecting International with the wrongful acts alleged, the court properly granted a judgment of involuntary nonsuit in favor of that defendant.

■ The plaintiff's brief contains ten assignments of error. Our views as to most of them are indicated in what has been said above as to the sufficiency of the complaint and evidence. The remaining assignments, in our opinion, are without merit and do not call for discussion, with this exception, that if upon the remand an amendment of the complaint should be requested and allowed so as to state a cause of action for breach of an agreement to insure, then evidence should be received for the purpose of showing that the cost of repairing an injured automobile does not necessarily represent all the damage sustained by its owner, and that the car, after repairs, may be of less value than it was before the injury. Evidence of this character, offered by the plaintiff, was excluded by the court, and the ruling is assigned as error. Where the extent of the damage to an automobile is in issue, such evidence is admissible. *Goff v. Elde,* 132 Or. 689, 693, 288 P. 212.

Since the court erred in granting a judgment of involuntary nonsuit in favor of the defendants Amundson & Baur, the cause must be remanded for further proceedings as to those defendants. Such amendments of the amended complaint should be allowed as may be in furtherance of justice and consistent with orderly procedure. The judgment of involuntary nonsuit in favor of the defendant International Harvester Company is affirmed. The judgment in favor of the defendants Amundson & Baur is reversed and the cause remanded.

BELT, J., did not participate in this decision.